UNITED STATES of America,
Plaintiff,

v.

Alfonso RODRIGUEZ, Jr., Defendant.

Crim.No. C2–04–55.

United States District Court,
D. North Dakota,
Northeastern Division.

July 29, 2005.

Robert G. Hoy, Ohnstad Twichell, West Fargo, ND, Richard Ney, Richard Ney Law Office, Wichita, KS, for Defendant.

Drew H. Wrigley, U.S. Attorney's Office, Fargo, ND, for Plaintiff.

## ORDER ON FIRST ROUND OF PRETRIAL MOTIONS

ERICKSON, District Judge.

The Court has before it several pretrial motions filed by Defendant (docs. # 58, 60, 62, 64, 66, 68, and 70). A hearing was held on June 24, 2005, during which the Court ruled from the bench on some of the issues and took other issues under advisement. The Court has carefully considered the briefs submitted by the parties along with the arguments and statements of counsel at the hearing and now issues this memorandum opinion and order, which encompasses all issues addressed during the hearing.

## SUMMARY OF RULINGS

I. Because the Court finds the Federal Death Penalty Act is not violative of the Constitution or recent decisions from the United States Supreme Court, Defendant's motion to declare the Federal Death Penalty Act unconstitutional and to strike the special findings in the indictment is DENIED. In addition, the Court finds the indictment is not rendered deficient by the government's failure to include non-statutory aggravating factors.

II. Because the Constitution is not suspended during the sentencing phase and the judge, as gatekeeper, has the authority to control the evidence and make assurances the evidence presented is reliable and fair, Defendant's motion to declare the "relaxed" evidentiary standard of 18 U.S.C.

§ 3593(c) unconstitutional is DENIED.

III. Defendant's motion for discovery is GRANTED with the understanding that the government has provided all the information and evidence it has gathered and the Court orders that the government shall continue to update and disclose additional information and evidence as it becomes available. Further, the government is ordered to provide disclosure of Rule 404(b) evidence and notice under Rule 807 of the Federal Rules of Evidence no later than 90 days prior to trial. If issues arise within 90 days of trial, the matter should be promptly brought to the attention of defense counsel and the Court as soon as practical.

IV. The Court, pursuant to its inherent authority, orders that the government shall submit an amended death penalty notice under seal by August 15, 2005, articulating the specific factual basis for each allegation Defendant has requested. Since this order is in lieu of a bill of particulars, Defendant's motion for a bill of particulars is rendered MOOT.

V. The Court finds Defendant has established a "particularized need" for disclosure of grand jury testimony and no basis has been presented to justify further withholding of the transcripts, Defendant's motion for disclosure of grand jury transcripts is GRANTED. It is ordered that the government shall provide defense counsel with the grand jury transcripts within 14 days of the date this order is filed. It is further ordered that the grand jury transcripts are not to be disclosed to anyone other than defense counsel or a defense expert retained by defense counsel.

VI. Given that the government has provided defense counsel with all the information and evidence it has gathered and is ordered to continue to update and disclose additional information as it becomes available, Defendant's motion for immediate production of Jencks Act and Fed. R.Crim.P. 26.2 statements is MOOT.

VII. The Court finds the minimum three day compliance under 18 U.S.C. § 3432 will not afford Defendant a fair opportunity for adequate defense preparation. While Defendant's motion to order the government to file a witness list 120–days before trial is DENIED, it is ordered that the government shall produce a tentative witness list 60 days prior to the commencement of the trial. It is further ordered that the witness list may be amended as of right until three days before trial.

## BACKGROUND

On November 22, 2003, Dru Katrina Sjodin disappeared while walking to her vehicle in a mall parking lot in Grand Forks, North Dakota. Her body was later found near Crookston, Minnesota in April 2004. On May 11, 2004, a federal grand jury returned an indictment in this Court charging Defendant with kidnapping resulting in the death of Dru Katrina Sjodin, in violation of 18 U.S.C. § 1201(a)(1). The indictment contains a section entitled "NOTICE OF SPECIAL FINDINGS." It is in this section that certain threshold mental culpability and aggravating factors that make the offense potentially punishable by death are set out. See 18 U.S.C. § 3591(a).

On October 28, 2004, the government filed a "NOTICE OF INTENT TO SEEK A SENTENCE OF DEATH." This notice is filed pursuant to 18 U.S.C.

§ 3593(a). In the notice, the government alleges the circumstances in this case are such that a penalty of death is justified. In support of its claim, the government will seek to prove the statutory threshold findings, as set out in 18 U.S.C. § 3591(a)(2)(A) through (D); the statutory aggravating factors, as set out in 18 U.S.C. § 3592(c)(1), (4), (6), and (9); and other non-statutory aggravating factors identified under 18 U.S.C. § 3593(a) and (c). The non-statutory aggravating factors include allegations that Defendant participated in additional charged and uncharged serious acts of violence, that Defendant represents a continuing danger to the lives and safety of other persons, that Defendant caused loss, injury, and harm to the victim and the victim's family, and that Defendant failed to avail himself of treatment for his sexual-predator proclivities.

Defendant now brings several motions before the Court for consideration.

## ANALYSIS

I. Motion to Declare the Federal Death Penalty Act Unconstitutional and to Strike Special Findings.

Defendant argues the Federal Death Penalty Act ("FDPA") in its current form violates the Fifth, Sixth, and Eighth Amendments to the Constitution. Additionally, Defendant also argues the failure to allege non-statutory aggravating factors renders the indictment deficient. Consequently, Defendant contends the Court should strike the "special findings" from the indictment and prohibit the government from seeking the death penalty against Defendant.

In summary, Defendant contends the structure of the FDPA demonstrates that Congress intended aggravating factors to be "sentencing considerations" and not elements of the crime of capital murder. Thus, nothing in the FDPA contemplates aggravating factors to be taken to a grand jury and contained in the indictment. Defendant maintains the government is essentially creating a new crime by adding aggravating factors, which amount to additional elements, to an offense set out by statute. Defendant argues the attempt by the government to "fix" the FDPA and comply with *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), by including the statutory intent requirements and the statutory aggravating factors in a "special findings" portion of an indictment fails under *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), because only Congress has the constitutional authority to amend the FDPA and an alteration of the scheme Congress has enacted by the Department of Justice or the courts usurps the powers of Congress.

In contrast, the government argues no rewriting of the FDPA is necessary to comply with the Constitution. The indictment in this case contains the *mens rea* and statutory aggravating factors which increase the possible punishment for the charged offense from life imprisonment to death. This procedure cures any Fifth Amendment concerns without violating the plain language of the FDPA. Furthermore, by including more in the indictment, the government argues, Defendant is given more protection because he is notified earlier of the factors which make his prosecution death-eligible.

### A. Background of Federal Death Penalty Act

The FDPA was enacted in 1994. At that time, *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), represented the law concerning the procedures required for the imposition of the death penalty. In Walton, the Supreme Court held that " 'the Sixth Amendment does not require that the specific findings

authorizing the imposition of the sentence of death be made by the jury.'" *Id.* at 648, 110 S.Ct. 3047 (quoting *Hildwin v. Florida,* 490 U.S. 638, 640–41, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989)). This meant it was constitutionally permissible for a judge, rather than a jury, to make factual findings necessary to raise the maximum possible sentence from life in prison to death.

The FDPA, however, provides a defendant more procedural protection than Walton required. Under the FDPA, if the government believes that the circumstances of an offense justify a death sentence, it may, at a "reasonable time" before trial, serve on the defendant a notice stating that death will be sought and "setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." 18 U.S.C. § 3593; see also 21 U.S.C. § 848(h). In order to lawfully impose a death sentence under the FDPA, a jury must first find beyond a reasonable doubt that a defendant convicted of a crime punishable by death acted with the requisite intent. The jury must then find beyond a reasonable doubt that at least one enumerated statutory aggravating factor exists. See 18 U.S.C. § 3593(c); 21 U.S.C. § 848(j). Only if these two preconditions are satisfied is a defendant eligible to receive a death sentence.

Whether death is, in fact, imposed depends on the outcome of a separate sentencing phase, at which the government may introduce proof of the aggravating circumstances of which it has given notice under § 3593 and the defendant may introduce evidence of mitigating circumstances. In order to impose a sentence of death, the jury must balance the aggravating and mitigating factors it finds at the sentencing hearing to exist and then find by unanimous vote that a death sentence is warranted. See 18 U.S.C. § 3593(e); 21 U.S.C. § 848(k).

## B. Compliance with the Fifth Amendment

Defendant contends the FDPA is unconstitutional in light of several Supreme Court decisions. Defendant argues that not only must the statutory aggravating factors be found by a jury under the Sixth Amendment, but also that they be found and returned in an indictment under the Fifth Amendment. Defendant maintains a conflict arises between the constitutional requirement that the statutory aggravating factors be presented to the grand jury and the FDPA, which neither contains a provision for presentment of the statutory aggravating factors to a grand jury nor is there a provision permitting a grand jury to make "special findings," as contained in the indictment in this case.

The Fifth Amendment provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. Supreme Court decisions following the enactment of the FDPA—notably Jones, Apprendi, and Ring—cast constitutional doubt on the provision of the FDPA that notice by the government under § 3593 is an adequate alternative to grand jury screening. In 1999, the Supreme Court decided *Jones v. United States,* 526 U.S. 227, 251, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). In Jones, the Supreme Court expressly held that "[u]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." 526 U.S. at 243, 119 S.Ct. 1215. Likewise, in *Apprendi v. New Jer-*

*sey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court reiterated that any fact increasing a penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Finally, in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the Supreme Court applied Apprendi and overturned its previous decision in *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), holding that the Sixth Amendment requires that aggravating circumstances necessary for imposition of the death penalty be found by a jury beyond a reasonable doubt.

■ Though the Supreme Court has established a defendant has a right under the Sixth Amendment to have capital aggravating factors proven to a jury beyond a reasonable doubt, it has yet to address whether the Fifth Amendment also requires such aggravating factors to be found by the grand jury and included in the indictment. Nonetheless, several federal court decisions indicate that Defendant is correct in his contention that statutory aggravating factors are to be alleged in an indictment under the Fifth Amendment. In *United States v. Robinson,* 367 F.3d 278, 284 (5th Cir.2004), the Court determined the Sixth Amendment holding in Ring "applies with equal force in the context of a Fifth Amendment indictment clause challenge, even though the Supreme Court has yet to hold as much in a capital case." In addition, the Eighth Circuit recently concluded that Ring "necessarily implies" a Fifth Amendment requirement that capital aggravating factors need to be found by the grand jury and included in the indictment. *United States v. Allen,* 406 F.3d 940 (8th Cir.2005); see also *United States v. Jackson,* 327 F.3d 273, 286–87 (4th Cir.2003) (after Ring, aggravating factors necessary to impose death must be charged in the indictment); *United States v. Quinones,* 313 F.3d 49, 53 n. 1 (2d Cir.2002) (statutory aggravating factors must now be alleged in the indictment and found by a jury in a capital case).

Thus, consistent with federal precedent and in light of Ring, Apprendi, and Jones, the Court finds the Fifth Amendment requires at least one statutory aggravating factor and the *mens rea* requirement to be found by the grand jury and charged in the indictment. *Allen,* 406 F.3d 940; *Robinson,* 367 F.3d at 284; *Jackson,* 327 F.3d at 286–87; *Quinones,* 313 F.3d at 53 n. 1. Because the government has alleged the four statutory aggravating factors it intends to prove at trial, the Court need not reach the issue of whether only one or all statutory aggravating factors the government intends to prove at trial need to be alleged in the indictment.

*C. The Constitutionality of the Federal Death Penalty Act in light of the Supreme Court's decisions in Ring, Apprendi, and Jones*

■ In this case, the grand jury has already returned an indictment charging the statutory aggravating factors that the government intends to prove at trial. Thus, the argument is not that the indictment does not satisfy Jones; instead, Defendant argues the indictment cannot lawfully support a death sentence because the FDPA does not allow for aggravating circumstances to be presented to the grand jury and contained in the indictment. Defendant cites 18 U.S.C. § 3593, which provides:

(a) Notice by the government.—If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file

with the court, and serve on the defendant, a notice—

(1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and

(2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

18 U.S.C. § 3593(a).

Defendant argues there is no provision of law for a grand jury to make "special findings" and it is not up to the prosecutors or the courts to try to fill the procedural void created by Ring. Defendant urges this Court to declare the FDPA unconstitutional on the basis that the only way to construe the statute along with Jones and Ring would be to judicially rewrite it in a way that is not permitted under the "constitutional avoidance" doctrine.

Defendant's argument has been considered and rejected by other courts. The Fourth Circuit in considering this same argument explained that "one flaw in [the defendant's] reasoning is the assumption that the Federal Death Penalty Act precludes the grand jury from charging aggravating factors in the indictment." *United States v. Barnette*, 390 F.3d 775, 789 (4th Cir.2004). There is simply no language in the FDPA that even mentions grand jury findings, let alone prohibits them with respect to facts constituting aggravating circumstances. *Id.* Moreover, there is nothing in the legislative history to indicate any such intent. *Id.* Thus, nothing in the FDPA must be "rewritten" to comply with Ring and Jones. Read together, the FDPA and Ring provide: (1) The Department of Justice must find that

the circumstances of an alleged offense justify the imposition of the death penalty; and (2) the Department of Justice finding is not alone sufficient to subject a defendant to a possible death sentence. *United States v. Sampson*, 245 F.Supp.2d 327, 333 (D.Mass.2003).

While it is true, as Defendant argues, when Congress enacted the FDPA, it did not specifically provide that the grand jury would play a role in deciding whether a defendant would be eligible for a death sentence if convicted of the crime charged. Nonetheless, the FDPA does not manifest an intent to prohibit the grand jury from performing its historic, constitutional function. The grand jury has traditionally been independent under the common law, and the Supreme Court has "insisted that the grand jury remain 'free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of any witness called before it.'" *United States v. Williams*, 504 U.S. 36, 48, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (quoting *United States v. Dionisio*, 410 U.S. 1, 17–18, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973)).

Contrary to Defendant's contentions, the Court finds Ring does not render the FDPA unconstitutional. It does not necessarily follow that the absence of specific language in the FDPA authorizing the grand jury to indict on aggravating circumstances means Congress intended to prohibit the grand jury from indicting, if necessary. Every law must comport with the Constitution. However, Defendant has not cited any federal criminal statute that explicitly directs prosecutors to present essential (or any) elements to a grand jury, even though such presentment is constitutionally required. Moreover, as one court has noted when discussing whether silence is a prohibition, "[i]t seems paradoxical to argue that an arson statute prohibits an

arsonist from requesting a trial by jury simply because the language of the statute does not explicitly provide for such, or that Congress intended to deny a rapist an attorney because the rape statute was silent on the issue." *United States v. Mikos,* 02 CR 137–1, 2003 WL 22110948, *7, 2003 U.S. Dist. Lexis 16044, *21 (N.D.Ill. Sept. 11, 2003).

Furthermore, the fact that Ring requires decisions by the grand jury in addition to the Department of Justice before a defendant is subject to the possible imposition of the death penalty is consistent with the usual practice in criminal cases.[1] Thus, Ring does not require that any provision of the FDPA be rewritten. *United States v. Le,* 327 F.Supp.2d 601, 610 (E.D.Va.2004) (explaining the government can easily comply with its constitutional and statutory obligations by first going to the grand jury and then filing notice of its intention to seek the death penalty under § 3593(a)). As explained earlier, Ring only requires that the grand jury perform its traditional role concerning facts that are now deemed to be the functional equivalent of elements for offenses for which Congress has decided the death penalty can be imposed. It makes no difference what label is put on the aggravating factors; if it has the potential to increase a defendant's punishment it must be found by a jury beyond a reasonable doubt, see *Ring,* 536 U.S. at 602, 122 S.Ct. 2428, and thus should be included in the indictment.

The Court's independent conclusion is consistent with many other reported federal court decisions which have uniformly determined that Ring does not render the FDPA unconstitutional. *Barnette,* 390 F.3d 775; *United States v. Robinson,* 367 F.3d 278 (5th Cir.2004); *Le,* 327 F.Supp.2d 601; *Sampson,* 245 F.Supp.2d 327; *United States. v. Johnson,* 239 F.Supp.2d 924 (N.D.Iowa 2003); *United States v. Denis,* 246 F.Supp.2d 1250 (S.D.Fla.2002); *United States v. Matthews,* 246 F.Supp.2d 137 (N.D.N.Y.2002); *United States v. Denis,* 246 F.Supp.2d 1250 (S.D.Fla.2002); *United States v. Regan,* 221 F.Supp.2d 672 (E.D.Va.2002); *United States v. Church,* 218 F.Supp.2d 813 (W.D.Va.2002).

## D. The Federal Death Penalty Act Following the Supreme Court's decision in Booker

■ Defendant also presents a novel issue regarding the FDPA based on the Supreme Court's holding in *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Defendant argues the Supreme Court's decision in Booker, which refused to uphold the constitutionality of the Federal Sentencing Guidelines in their entirety by engrafting the Sixth Amendment jury trial right onto the Guidelines, mandates that this Court also strike down the FDPA under similar reasoning. Defendant argues Booker stands for the proposition that a court should not read Apprendi, Jones, and Ring into an existing federal statute when to do so would be "plainly contrary to the intent of Congress." By applying Booker to the FDPA, Defendant argues it is clear that reading into the FDPA the requirement that aggravating factors must be presented to the grand jury and contained in the indictment is plainly contrary to Congressional intent in light of the fact that when the FDPA was enacted the prevailing constitutional law was to treat the aggravating factors as "sentencing considerations." Furthermore, Defendant asserts that Congress in passing the FDPA, intended the government to have the sole authority to decide

---

1. Rule 7 of the Federal Rules of Criminal Procedure explicitly provides that an indictment should contain a "statement of the essential facts constituting the offense charged and must be signed by an attorney for the government."

under which circumstances it would seek a sentence of death, not the grand jury. Because it is not within the authority of the prosecutors or the courts to fix a defective statute, Defendant argues this Court should declare the FDPA unconstitutional under a similar analysis as set forth by the Supreme Court in Booker.

In Booker, following a determination that the Federal Sentencing Guidelines violated the Sixth Amendment, the provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), was severed and excised as well as another statutory section regarding appellate review of a sentence which depended on the mandatory nature of the Guidelines, 18 U.S.C. § 3742(e). The remedy in Booker was determined by looking to legislative intent. 125 S.Ct. at 757. The Supreme Court considered whether it would deviate less radically from Congress' intended system by (1) superimposing the constitutional requirement that the Sixth Amendment requires juries, not judges, to find facts relevant to sentencing; or (2) eliminating some provisions of the statute. *Id.* The Court concluded that if the constitutional requirement it announced in Booker was added onto the Sentence Act, as currently written, the requirement would so transform the scheme that Congress created that Congress likely would not have intended the Act as modified to stand. *Id.* at 759.

According to Justice Breyer's opinion in Booker, retaining the Sentencing Act as written, while engrafting onto the existing Act the Sixth Amendment "jury trial" requirement, would fundamentally change the Guidelines by preventing the sentencing court from increasing a sentence on the basis of a fact that the jury did not find (or that the defendant did not admit). 125 S.Ct. at 757. Such a remedy would further undermine the sentencing statute's basic aim of ensuring similar sentences for those who have committed similar crimes in similar ways and would create a system far more complex that Congress could have intended. *Id.* at 760–61.

Thus, the Supreme Court in Booker focused on the idea that adding the constitutional requirement it announced onto the Sentencing Act would transform the scheme that Congress created and would create a sentencing system that Congress did not intend. Justice Breyer's opinion does not necessarily denote that it is *per se* unconstitutional to engraft a new constitutional requirement onto a statute. Instead, it points out that a new constitutional rule may render a statute unconstitutional when superimposing the rule on the statute transforms the scheme Congress intended.

In contrast to the Sentencing Act, the Court finds the FDPA, as currently written, provides for a scheme that would remain consistent as intended by Congress even in light of the constitutional determinations made by the Supreme Court since the FDPA's enactment. The FDPA provides that the government shall give notice, within a reasonable time before trial, setting forth the aggravating factor or factors it proposes to prove as justifying a sentence of death, if the defendant is convicted of the charged offense. 18 U.S.C. § 3593(a). The Act further provides for presentment of aggravating factors to the jury. The burden of establishing the existence of any aggravating factor is on the government, and is only satisfied by proof beyond a reasonable doubt. 18 U.S.C. § 3593(c). A finding with respect to any aggravating factor must be unanimous. 18 U.S.C. § 3593(d). Finally, the Act provides that consideration should be given to whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death. 18 U.S.C. § 3593(e). Based upon this consid-

eration, the jury by unanimous vote shall recommend whether the defendant should be sentenced to death. *Id.*

When enacting the FDPA, Congress directed that the government shall give notice of aggravating factors it intends to rely upon to justify a sentence of death. Further, Congress contemplated that aggravating factors should be presented to the jury and proven beyond a reasonable doubt. Congress required that a finding with regard to any aggravating factor must be unanimous. Permitting a grand jury now to consider the statutory aggravating factors does nothing more than augment the FDPA as it is currently written by providing one more level of procedural protection for a defendant. The important role of the grand jury in our justice system has "the dual function of determining if there is probable cause to believe a crime has been committed and of protecting citizens against unfounded criminal prosecutions." *Branzburg v. Hayes,* 408 U.S. 665, 686–87, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). The statutory roles of the Department of Justice, the judge, and the jury as set out in the FDPA are not altered by also recognizing a role for the grand jury. Therefore, the Court finds the FDPA does not have to be rewritten to permit a grand jury to consider factors that have the potential to increase a defendant's sentence.

Defendant also argues by allowing the inclusion of statutory aggravating factors in the indictment, a new criminal offense is created with elements not enacted into law by Congress. However, this argument has been addressed and rejected by the Eighth Circuit. In Lee, the defendant argued that since the FDPA also required proof of aggravating factors, it must be interpreted after Ring to create new common law offenses. *United States v. Lee,* 374 F.3d 637, 648–49 (8th Cir.2004), cert. denied —— U.S. ——, 125 S.Ct. 2962, —— L.Ed.2d —— (2005). The Eighth Circuit concluded

that Ring simply held that for the maximum penalty to be imposed, the legislature had required findings of aggravating factors in addition to findings on the elements of the offense. *Id.* The Supreme Court in Ring held that Arizona's enumerated statutory aggravating factors operate as the "functional equivalent of an element of a greater offense," but it did not hold that such factors actually become elements of a new substantive offense. See *Ring,* 536 U.S. at 609, 122 S.Ct. 2428 (quoting *Apprendi,* 530 U.S. at 494 n. 19, 120 S.Ct. 2348).

In conclusion, read together, the FDPA and the Supreme Court decisions provide: (1) the Fifth Amendment requires at least one statutory aggravating factor and the *mens rea* requirement to be found by the grand jury and charged in the indictment; (2) The Department of Justice must find that the circumstances of an alleged offense justify the imposition of the death penalty; (3) the government must provide notice of its intent to seek a sentence of death within a reasonable time before trial; and (4) aggravating factors must be found by a jury beyond a reasonable doubt before the death penalty can be imposed. The Court finds the constitutional mandate that aggravating factors, because they have the potential to increase a defendant's sentence, are to be first submitted to a grand jury does not so transform the scheme Congress intended when it enacted the FDPA that it would not have intended the FDPA as so modified to stand. Thus, a finding that the Supreme Court's holdings following the enactment of the FDPA remain harmonious with the FDPA is the remedy Congress would have preferred and is most compatible with Congress' intent as embodied in the FDPA. As such, the Court is not persuaded that the FDPA must be struck down under the reasoning applied in *United States v. Booker.* Accordingly, Defendant's motion to declare

the FDPA unconstitutional and to strike special findings in the indictment is DE-NIED.

### E. Non–Statutory Aggravating Factors

■ Defendant argues the indictment is deficient because the four non-statutory aggravating factors that are contained in the Notice of Intent to Seek a Sentence of Death are not listed in the indictment.

As a practical matter, there are three stages to a federal death penalty case. The first stage determines whether guilt has been proven. If guilt has been proven, in the second stage the jury decides whether the defendant is eligible for the death penalty. In the "eligibility stage," the government must prove, beyond a reasonable doubt, one of the four mental states delineated in 18 U.S.C. § 3591(a)(2) and at least one of the sixteen statutory aggravating factors set forth in 18 U.S.C. § 3592(c). If the defendant is found to be eligible for execution, in the third stage, "the selection stage," the jury decides whether to select the death penalty as the punishment for the crime. It is in the last stage that non-statutory aggravating factors enter into the jury's deliberations. *United States v. Sampson*, 275 F.Supp.2d 49, 99 (D.Mass.2003).

Defendant cites *United States v. Green*, 372 F.Supp.2d 168 (D. Mass.2005) in support of his position that the failure to include non-statutory aggravating factors renders the indictment deficient. In *Green*, the court struck the non-statutory aggravating factors, listed in the government's notice to seek the death penalty, accusing the defendant of prior crimes, unrelated to the charged offense and never presented to a grand jury or adjudicated in any forum. *Id.* at 172–73. The court noted its ruling was narrow in that non-statutory factors such as lack of remorse and victim impact are factors tied to the

charged offense and do not raise the same constitutional concerns as prior unadjudicated accusations of crime unrelated to the offense which are "uniquely prejudicial." *Id.* at 174. The court went on to further find that "any aggravating factor" is "legally essential to punishment" because it may effectively tip the scale from life to death in combination with the other factors at play. *Id.* at 177–78. Thus, after Blakely the court concluded grand jury screening is indispensible when the factor at issue is a prior unadjudicated crime.

Other circuits issuing opinions on this question are in conflict with the reasoning in Green that any aggravating factor is legally essential to punishment. These courts have held that non-statutory aggravating factors need not be alleged in the indictment, reasoning that statutory aggravating factors narrow the class of defendants eligible for the death penalty, whereas non-statutory aggravating factors do not have to be alleged in the indictment because they serve the separate individualizing function that ensures that the jury has before it all possible relevant information about the individual defendant whose fate it must determine. See *United States v. Higgs*, 353 F.3d 281 (4th Cir.2003); *United States v. Wilk*, 366 F.Supp.2d 1178, 1186–87 (S.D.Fla.2005) (finding there is no requirement that the non-statutory aggravating factors be alleged in the indictment since these factors do not increase the punishment to which a defendant might be subjected, but serve the purpose of aiding the fact finder in selecting the appropriate sentence); *United States v. Hargrove*, No. 03–20192–CM, 2005 WL 1041340, *2, 2005 U.S. Dist. Lexis 8074, **4–6 (D.Kan. Feb.25, 2005) (because non-statutory factors are not required to be included in the indictment, the indictment was constitutionally sufficient to qualify the defendant for death under the FDPA); *United States v. Taylor*, 302 F.Supp.2d 901, 906

(N.D.Ind.2003) (neither the holding in Apprendi nor Ring require that the non-statutory aggravating factors be charged in the indictment); *United States v. Sampson,* 275 F.Supp.2d 49, 100 (D.Mass.2003) (the contrast between statutory and non-statutory factors is even clearer in light of Ring; statutory aggravating factors are deemed to be the functional equivalents of offense elements and must be charged in the indictment, while non-statutory factors need not be alleged in the indictment); *United States v. Battle,* 264 F.Supp.2d 1088, 1105 (N.D.Ga.2003) (non-statutory aggravating factors need not be alleged in the indictment because they do not increase the punishment); *United States v. Regan,* 221 F.Supp.2d 672, 680–81 (E.D.Va.2002) (because a finding of non-statutory aggravating factors does not increase the penalty beyond the prescribed statutory maximum, the Fifth Amendment is not implicated).

In this case, the government has included in its notice of intent to seek a sentence of death four non-statutory aggravating factors: (1) participation in charged and uncharged serious acts of violence; (2) future dangerousness of the defendant; (3) victim impact; and (4) the defendant's failure to avail himself of treatment for his sexual-predator proclivities. The Court agrees with the reasoning of the courts which have concluded non-statutory aggravating factors do not need to be alleged in the indictment. Notwithstanding this conclusion, the Court is cognizant of constitutional questions that could be raised by the non-statutory factor that Defendant participated in "uncharged serious acts of violence." At this time, the "uncharged serious acts of violence" are only raised by the government's notice of intent to seek the death sentence. The Court does not know what "uncharged serious acts of violence" the government is contemplating and whether they are related to the offense charged in this case. As noted later on in the discussion regarding Defendant's motion for a bill of particulars, Defendant is entitled to more specific factual information regarding several of the government's allegations, including Defendant's participation in "uncharged serious acts of violence." Therefore, the Court is not in a position to rule on the "uncharged serious acts of violence" allegation and will reserve ruling on a challenge to this non-statutory aggravating factor.

Accordingly, Defendant's motion to declare the indictment deficient because it does not contain all non-statutory aggravating factors is DENIED. Once Defendant has been given more information regarding the non-statutory aggravating factor regarding "uncharged serious acts of violence," he may make additional arguments on this issue at that time.

II. Motion to Declare the FDPA's Relaxed Evidentiary Standards Unconstitutional

■ Defendant argues that the relaxed evidentiary standard of 18 U.S.C. § 3593(c) is unconstitutional because it provides that aggravating factors may be proved by information that does not conform to either the Federal Rules of Evidence or the Confrontation clause. Defendant contends this is in violation of the Sixth Amendment, the Due Process Clause of the Fifth Amendment, and the Eighth Amendment.

The government argues that nothing in Ring provides a basis upon which to mandate use of the Federal Rules of Evidence in a capital sentencing hearing. After Ring, as before it, courts are still bound by constitutional dimensions, so the evidentiary standard articulated in the FDPA remains constitutional.

The FDPA provides for a relaxed evidentiary standard during the sentencing hearing in order to give the jury an oppor-

tunity to hear all relevant and reliable information, unrestrained by the Federal Rules of Evidence. *United States v. Jones,* 132 F.3d 232, 241 (5th Cir.1998). The FDPA provides:

At the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under section 3592.... The defendant may present any information relevant to a mitigating factor. The government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a). Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.... The government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death.

18 U.S.C. § 3593(c).

■ Subject to the requirements of due process, "Congress has the power to prescribe what evidence is to be received in the courts of the United States." *United States v. Brainer,* 691 F.2d 691, 695 n. 7 (4th Cir.1982) (quoting *Tot v. United States,* 319 U.S. 463, 467, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943)). As a result, Congress need not require the application of the Federal Rules of Evidence for proving *mens rea* and aggravating factors, as long as the evidentiary scheme adopted comports with the Fifth and Sixth Amendments. *United States v. Haynes,* 269 F.Supp.2d 970, 986 (W.D.Tenn.2003). The Eighth Circuit has addressed the evidentiary standard of § 3593(c) as being constitutional:

The Federal Death Penalty Act (FDPA) erects very low barriers to the admission of evidence at capital sentencing hearings. Since the need to regulate the scope of testimony is less at the penalty phase than at the guilt phase of trial, parties may present evidence 'as to any matter relevant to the sentence.' 18 U.S.C. § 3593(c). See also *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (A judge or jury at a capital sentencing hearing should 'not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial.'); *Gregg v. Georgia,* 428 U.S. 153, 203–04, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (In capital sentencing hearing, 'it [is] desirable for the jury to have as much information before it as possible when it makes the sentencing decision').

*United States v. Lee,* 274 F.3d 485, 494 (8th Cir.2001). Defendant urges this Court to revisit the issue following *Ring.* Similarly, the Eighth Circuit was asked to reconsider the evidentiary standard under the FDPA following *Ring* again in *United States v. Lee,* 374 F.3d 637, 648 (8th Cir. 2004). In Lee, the Eighth Circuit agreed with the Second Circuit that the evidentiary standard under the FDPA is constitutional even in light of *Ring,* determining the FDPA standard does not impair the reliability of the evidence admissible during the penalty phase. 374 F.3d at 648. Rather, the court concluded "the admission of more rather than less evidence during the penalty phase increases reliability by providing full and complete information about the defendant and allowing for an individualized inquiry into the appropriate

sentence for the offense." *Id.* (citing *United States v. Fell,* 360 F.3d 135, 143 (2d Cir.2004)). Likewise, other courts considering this issue have concluded the evidentiary standard under the FDPA is constitutional in light of Jones, Apprendi, and Ring. *United States v. Taylor,* 302 F.Supp.2d 901, 905–06 (N.D.Ind.2003); *United States v. Haynes,* 269 F.Supp.2d 970, 985 (W.D.Tenn.2003); *United States v. Matthews,* 246 F.Supp.2d 137, 141–46 (N.D.N.Y.2002); *United States v. Lentz,* 225 F.Supp.2d 672, 682–83 (E.D.Va.2002); *United States v. Regan,* 221 F.Supp.2d 672, 682–83 (E.D.Va.2002).

Thus, with regard to the Eighth Amendment, it is still desirable for the jury to have as much information before it as possible when it makes the sentencing decision. *Gregg,* 428 U.S. at 204, 96 S.Ct. 2909; *United States v. Jones,* 132 F.3d 232, 241–42 (5th Cir.1998) (the relaxed evidentiary standard does not impair the reliability or relevance of information at capital sentencing hearings, but helps to accomplish the individualized sentencing required by the constitution). Further, even though the sentencing hearing will not be governed by traditional evidentiary restraints, the district court is permitted to exclude unfairly prejudicial information. In fact, § 3593(c) specifically announces that the parties shall be given fair opportunity to present argument as to the adequacy of the information to be presented at the sentencing hearing as well as the appropriateness of the information to the case. Thus, because the FDPA expressly supplants only the rules of evidence, not constitutional standards, the district court retains the authority and flexibility under the FDPA to impose upon the parties any standards of admissibility or fairness dictated by the Fifth and Sixth Amendments. *Haynes,* 269 F.Supp.2d 970, 987 (W.D.Tenn.2003). The judge, as gatekeeper, has the authority to control the evidence and make assurances that the infor-

mation sought to be presented is reliable and fair. The Constitution is not suspended during the sentencing phase. Thus, questions regarding confrontation, due process, reliability, and probative value considerations are issues the judge still has to consider with regarding to sentencing evidence. As a result, § 3593(c) can be read in a manner consistent with the Constitution, even after Ring. Accordingly, Defendant's motion to declare the evidentiary standard of 18 U.S.C. § 3593(c) unconstitutional is DENIED.

## III. Motion for Discovery and Inspection as to Guilt and Punishment Issues

Defendant filed a motion requesting the government to provide certain information and/or evidence which may be relied upon or used by the prosecution on the issues of guilt and punishment. Defendant's request consists of 69 numbered paragraphs, with related items divided into groups. The government responded to the motion by stating it has provided defense counsel with all documents and information it has and will continue to provide additional information as it becomes available.

During the hearing, the Court acknowledged the government's response that it has provided defense counsel with all the information it has at this time and will continue to provide additional information as it becomes available. Accordingly, the Court hereby GRANTS Defendant's motion for discovery and ORDERS that the government continue to update and disclose information as it becomes available. With that understanding, the Court issued the following specific orders:

(1) Statements/Waivers By Defendant (paragraphs 1 through 6): The Court ordered the government to produce the written statements, including the persons present at the time the statements were reported

and the time the statements were made. The government is further ordered to produce any oral statement and a summary if one has not already been produced and the identity of the persons present when the oral statement was made. The same information should be produced with respect to waivers and invocation of rights.

(2) Physical Evidence (paragraphs 7 through 15): The Court granted Defendant's request through paragraph 17 with the caveat that, with the exception of the ongoing testing that currently is being completed, no further destructive testing shall be done that destroys an entire sample or specimen unless it is done with the consent of counsel or court order. Further, the Court ordered that to the extent possible, the laboratory shall preserve a sample suitable for independent testing and if that is not possible, it should be brought to the attention of defense counsel. If defense counsel desires an order with regard to the ongoing testing, the matter should be brought to the Court's attention.

(3) Scientific Reports (paragraph 18): The Court granted the request for the production of information requested by Defendant regarding scientific reports; however, it appears the information has already been produced by the government.

(4) Identification Procedures (paragraphs 19 through 20): The Court granted Defendant's request for information with the understanding that the information has already been provided to defense counsel.

(5) Witnesses (paragraphs 21 through 31): The government is ordered to produce the identity of any informant. If the government has reason to believe it is essential that the informant's identity remain confidential, it can raise that issue in a protective order. With respect to the remaining paragraphs, it appears the government has provided defense counsel with all the information it has and shall continue to do so as more information becomes available. The Court orders that the government produce information requested in these paragraphs that it has not previously disclosed.

(6) Exculpatory Evidence and Impeachment Information (paragraphs 32–49): The Court orders the government to comply with *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

Defendant also requests information related to the issue of punishment. Many of the requests for information as they relate to the issue of guilt overlap with the information requested on the issue of punishment. The Court HEREBY ORDERS that the obligations imposed upon the government apply to both the issue of guilt as well as the issue of punishment.

In addition, Defendant has requested that the Court order the production of evidence or information relating to Rules 404(b) and 807 of the Federal Rules of Evidence. Upon consideration, the Court HEREBY ORDERS that the government shall provide disclosure of Rule 404(b) evidence and notice under Rule 807 no later than 90 days prior to trial. IT IS FURTHER ORDERED that if issues relating to Rule 404(b) or 807 arise within 90 days of trial, the matter should be promptly brought to the attention of defense counsel and to the court as soon as practical.

IV. Motion for a Bill of Particulars

Defendant requests the following information in a Bill of Particulars:

1. The motive or purpose that would support the words "and otherwise" in the kidnapping resulting in death charge.

2. The specific act(s) the government intends to rely upon to prove the threshold finding · of 18 U.S.C. § 3591(a)(2)(C), which is that Defendant intentionally participated in one or more acts, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than a participant in the offense, and Dru Sjodin died as a direct result of such act(s).

3. The specific act(s) of violence the government intends to rely upon to prove the threshold finding of 18 U.S.C. § 3591(a)(2)(D), which is that Defendant intentionally and specifically engaged in an act or acts of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted reckless disregard for human life and that Dru Sjodin died as a direct result of the act.

4. The specific act(s) the government intends to rely upon to prove the aggravating factor in 18 U.S.C. § 3592(c)(6), which is Defendant killed Dru Sjodin in an especially heinous, cruel, and depraved manner, involving torture and serious physical abuse.

5. The specific factual basis the government intends to rely upon to prove the substantial planning and premeditation aggravating factor of 18 U.S.C. § 3592(c)(9).

6. The specific additional charged and uncharged "serious acts of violence" the government intends to rely upon to prove the non-statutory aggravating factor found in 18 U.S.C. § 3593(a) and (c), which is Defendant participated in additional charged and uncharged serious acts of violence. Defendant requests that the government produce a written list identifying the particular acts, the dates of the acts, and the witnesses and exhibits tending to prove the acts which the government intends to rely upon to prove this non-statutory aggravating factor.

7. An outline of evidence the government intends to rely upon to prove the non-statutory aggravating factor of future dangerousness. Defendant requests the government produce a written list identifying any unadjudicated acts, the date of any act, and any scientific testing or studies, witnesses and exhibits the government intends to rely upon to prove this non-statutory aggravating factor.

8. The nature of the evidence the government intends to rely upon to prove the non-statutory aggravating factor regarding victim impact. Defendant requests an outline of the proposed victim impact evidence from each witness.

9. The factual basis the government intends to rely upon to prove Defendant failed to avail himself of sexual offender treatment. Defendant requests an outline of the evidence the government intends to introduce, a list of the witnesses the government intends to call, and exhibits the government intends to offer to support this non-statutory aggravating factor.

Defendant argues this information is within the knowledge of the government and is necessary and essential to adequately inform him of the threshold findings and aggravating factors on which the government intends to rely to obtain a sentence of death. Defendant contends the failure of the government to furnish this information, well in advance of a capital trial, would be a denial of due process and a violation of the Fifth, Sixth, and Eighth Amendments to the Constitution.

The government argues that it is providing discovery pursuant to the District of North Dakota's "standard discovery policy." At this time, it has already provided some 16,000 pages of discovery, 1870 photographs, 10 CDs, and 2 DVDs. The government contends the indictment adequately informs Defendant of the charges and Defendant is improperly using a motion for a bill of particulars as a discovery tool.

Rule 7(f) of the Federal Rules of Criminal Procedure provides:

> (f) Bill of Particulars. The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

 Under this rule, the trial court has broad discretion in granting or denying a motion for a bill of particulars. *United States v. Stephenson,* 924 F.2d 753, 761 (8th Cir.1991). In the exercise of discretion, trial courts have looked to such factors as the complexity of the charged offense, the clarity of the indictment, and the degree of discovery made available to the defendant without the bill. *United States v. Kendall,* 665 F.2d 126, 135 (7th Cir.1981). The primary purpose of a bill of particulars is to inform the defendant of the nature of the charges against him and to prevent or minimize the element of surprise at trial. *United States v. Wessels,* 12 F.3d 746, 750 (8th Cir.1993).

A bill of particulars is often discussed in the context of clarifying indictments. The Court finds that a bill of particulars is not necessarily the correct procedural approach under these circumstances. Nevertheless, the Supreme Court has recognized that a defendant's ability to defend against the case presented by the prosecutor, which includes advocating for a particular punishment, is one of the "hallmarks" of due process. *Simmons v. South Carolina,* 512 U.S. 154, 175, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) (O'Connor, J., concurring). Therefore, the Court has determined that formulating some procedure to require the government's disclosure of its underlying factual basis for certain allegations in the indictment and notice of intent to seek a sentence of death is appropriate.

In *United States v. Kaczynski,* the district court was faced with the same issue in which defense counsel was challenging the sufficiency of the information that the government had provided and the government responded that it had provided all the information during the course of discovery. The court explained:

> Absent further revelations by the government, Defendant may be forced to defend against these allegations for the first time during the prosecutor's case-in-chief at sentencing. This raises the specter of unfair surprise and potentially prejudices Defendant's ability to defend against the government's efforts to impose the death penalty. Contrary to the government's suggestion, the fact that the precise acts and/or events may have been disclosed in the course of discovery does not obviate the need for a more specific notice. Even if the government has provided Defendant with documents

detailing specific acts, the government has not yet indicated which acts and/or events it intends to use at sentencing. In fact, the characterization of the discovery provided as extensive lends further support for requiring the government to identify the particular acts upon which it will rely. Extensive discovery could make it difficult for Defendant to ascertain which precise discovery will be used against him.

*United States v. Kaczynski,* No. CR–S–96–259GEB, 1997 WL 716487, *20 (E.D.Cal. Nov. 7, 1997). Other courts have adopted the approach utilized in Kaczynski and pursuant to the court's "inherent authority" ordered the government to provide more detailed information regarding the aggravating factors. *United States v. Illera Plaza,* 179 F.Supp.2d 464, 470–72 (E.D.Pa.2001); *United States v. Cooper,* 91 F.Supp.2d 90, 101 (D.D.C.2000); *United States v. Glover,* 43 F.Supp.2d 1217 (D.Kan.1999).

Upon consideration of Defendant's motion, the Court is of the view that Defendant is entitled to know more detailed information to properly defend against the allegations in this case. The Court has reviewed each of Defendant's requests and finds the factual particularity requested is justified to fulfill Defendant's objective of meaningful notice to adequately prepare a defense and meet the allegations against him. Accordingly, pursuant to the Court's inherent authority, the Court HEREBY ORDERS that the government respond to each of the requests Defendant has set forth in his motion for a bill of particulars. The government is directed to file an amended death penalty notice by August 15, 2005, articulating the specific factual basis for each allegation in the indictment and the notice of intent to seek a sentence of death that Defendant has requested. This amended notice shall be filed under seal with a protective order permitting disclosure only to defense counsel and experts retained by defense counsel. This relief is granted in lieu of a bill of particulars.

## V. Motion for Production of Grand Jury Transcript

Defendant requests access to the testimony presented to the grand jury because such testimony is relevant to obtaining information that will be used to support the aggravating factors, to obtaining evidence in mitigation, and to obtaining exculpatory and/or impeaching evidence.

The government argues grand jury testimony is generally not discoverable on a pretrial motion and pretrial disclosure is not required by Rule 16 of the Federal Rules of Criminal Procedure. Nonetheless, the government has agreed to provide the grand jury transcript 30 days before trial.

Under Rule 6(e)(3)(E)(i), Fed. R.Crim.P., a court may authorize disclosure of grand jury transcripts at a time, in a manner, and subject to any other conditions that it directs, preliminary to or in connection with a judicial proceeding. To justify disclosure of grand jury transcripts under Rule 6(e), a party must show a "particularized need" which outweighs the policy of secrecy. See *United States v. Wilkinson,* 124 F.3d 971, 977 (8th Cir. 1997). Typical particularized needs include impeachment, refreshing the recollection of, and testing the credibility of trial witnesses. *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222 n. 12, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979).

In his brief, Defendant requests the grand jury transcript to obtain evidence that may be used to support the aggravating factors, to obtain evidence to be used in mitigation, and to obtain exculpatory and/or impeaching evidence. In this case, Defendant seeks testimony before the grand jury to gather evidence for, among

other reasons, impeachment purposes. Impeachment may be sufficient to demonstrate "a particularized need" to justify disclosure of grand jury testimony. See *Douglas Oil Co.*, 441 U.S. at 222 n. 12, 99 S.Ct. 1667. Once a particularized need has been established, it must be determined whether the need for disclosure of materials outweighs the need for secrecy. *United States ex rel. Stone v. Rockwell Int'l Corp.*, 173 F.3d 757, 759 (10th Cir.1999).

Rule 26.2 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3500 provide that a witness's statement to a grand jury must be provided after the witness has testified on direct examination. However, the local practice rules for the District of North Dakota require disclosure of grand jury transcripts three days prior to the date the witness will testify. In this case, the government has agreed to provide the grand jury transcripts 30 days prior to trial. Other than citing to the rules and the statute, the government did not articulate in its brief and could not state at the hearing any reason for not producing the transcripts immediately rather than only 30 days prior to trial.

In order to allow Defendant a fair opportunity to develop his defense, including acquiring impeachment and/or exculpatory information, and to prepare for the possible penalty phase of the trial, including gathering information for impeachment purposes and to test the credibility of the grand jury witnesses, the Court finds immediate disclosure of the grand jury testimony is justified in this case. The Supreme Court has recognized that "after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." *United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 234, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). Because of the nature and complexity of the case and since the government has already agreed to disclose the grand jury tran-

scripts earlier than required under the rules and no basis has been presented to justify withholding the transcripts, the Court is of the view that an earlier disclosure of the grand jury testimony in this case outweighs the need for maintaining the secrecy of the proceedings. It should be noted that at the hearing defense counsel referred to the need for the grand jury transcripts to consider a motion to dismiss the indictment. This, however, is an improper purpose to request disclosure of the grand jury testimony and the Court is not granting Defendant's request on this basis.

For the reasons explained above, Defendant's motion for disclosure of the grand jury transcripts is GRANTED. IT IS HEREBY ORDERED that the government shall provide the grand jury transcripts to defense counsel within 14 days of this order. IT IS FURTHER ORDERED that the grand jury transcripts are not to be disclosed to anyone other than defense counsel or an expert retained by defense counsel.

## VI. Motion for the Immediate Production of Jencks/Rule 26.2 Statements

Defendant argues that although Jencks Act and Fed.R.Crim.P. 26.2 statements need to be provided only after the witness testifies, he urges the Court to implement a rule which will accommodate both the law and due process. Defendant requests the Court to order the government to provide this information immediately. Defendant also seeks production of all notes by law enforcement officers as well as formal reports.

The government asserts it has already provided the witnesses' statements contemplated by Jencks, as well as statements of persons who might not be called as witnesses. As for notes by law enforcement officers, the government is not aware of the existence of specific notes, and if

there were notes, it is likely they were incorporated into typewritten reports.

Given that the government has provided defense counsel with all the information and evidence it currently has gathered and will continue to update and disclose additional information as it becomes available, the Court finds this motion has been rendered moot. Therefore, the Court orders the government to continue to comply with its discovery policy and if the government decides to withhold any information or evidence, it is to provide notice to defense counsel and the Court immediately. Accordingly, Defendant's motion for Jencks Act material and Rule 26.2 Statements is rendered MOOT.

## VII. Motion to Order the Government to File a Witness List 120 Days Before Trial

Defendant has filed a motion to order the government to file a witness list 120 days prior to trial. The government requests that the Court deny the motion because 18 U.S.C. § 3432 requires a witness list at least 3 days before trial, not the extraordinary 120 days that Defendant is requesting.

Section 3432 of the United States Code provides:

> Any person charged with treason or other capital offense shall at least three entire days before commencement of trial be furnished with a copy of the indictment and a list of the veniremen, and of the witnesses to be produced on the trial for proving the indictment, stating the place and abode of each veniremen and witness, except that such list of the veniremen and witnesses need not be furnished if the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person.

 The purpose of providing a witness list is a procedural pretrial safeguard

which derives from the severity of the punishment in a capital case. See *United States v. Steel*, 759 F.2d 706, 709–10 (9th Cir.1985); *United States v. Crowell*, 359 F.Supp. 489, 492 (M.D.Fla.1973). The statute is intended "to inform the defendant of the testimony he will have to meet, and to enable him to prepare his defense." *United States v. Chandler*, 996 F.2d 1073, 1098 n. 6 (11th Cir.1993) (quoting *Logan v. United States*, 144 U.S. 263, 304, 12 S.Ct. 617, 36 L.Ed. 429 (1892), overruled on other grounds, *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)). The government has indicated that it will comply with the statute; however, it is clear that the minimum three day compliance with 18 U.S.C. § 3432 will not afford Defendant a fair opportunity for adequate defense preparation. See *United States v. Willis*, 33 F.R.D. 510 (S.D.N.Y.1963) (finding three days under statute not enough time and ordering witness list to be produced 30 days prior to trial); see also *United States v. Tipton*, 90 F.3d 861, 888–89 (4th Cir.1996) (witness list to be produced ten days before trial); *Chandler*, 996 F.2d at 1098 (government provided witness list 14 days before trial and supplemented it four days before commencement of trial); *United States v. Thompson*, 349 F.Supp.2d 369, 375 (N.D.N.Y.2004) (court ordering production of witness list 45 days prior to trial); *United States v. Falkowitz*, 214 F.Supp.2d 365, 395 (S.D.N.Y.2002) (government ordered to produce witness list 30 days prior to trial due to the fact that preparation for trial will be time-consuming).

Upon consideration, it is HEREBY ORDERED that the government produce a tentative witness list in this case 60 days prior to the commencement of trial. The list should include witnesses designated as "will call," "probably will call," and "may call." IT IS FURTHER ORDERED that

the witness list may be amended as of right until three days before trial.

IT IS SO ORDERED.