886 A.2d 562

**Vernon EVANS, Jr.**

v.

**STATE of Maryland.**

Nos. 18, Sept. Term, 2004, 3, Sept. Term, 2005.

Court of Appeals of Maryland.

Nov. 10, 2005.

Reconsideration Denied Dec. 13, 2005.

A. Stephen Hut, Jr. (Todd C. Zubler, Kalea Seitz Clark, Shoshana L. Gillers, Kayla C. Stahlman, Wilmer Cutler Pick-

ering Hale & Dorr LLP, Washington, DC, Jeffrey B. O'Toole, Julie Sippel Dietrich, O'Toole, Rothwell, Nassau & Steinbach, Washington, DC, Catherine M. Grosso, of counsel, Washington, DC, all on brief), for appellant.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

William J. Murphy, John J. Connolly, Murphy & Schaffer, LLC, Baltimore, amicus curiae.

John J. Gibbons, Lawrence S. Lustberg, Claudia Van Wyk, Gitanjali S. Gutierrez, Jonathan Hafetz, Megan Lewis, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., Newark, NJ, Angela Ciccolo, Interim Gen. Counsel, Victor L. Goode, Asst. Gen. Counsel, NAACP, Inc., Baltimore, all of counsel.

Argued before BELL, C.J., RAKER, WILNER, HARRELL, BATTAGLIA, GREENE and LAWRENCE F. RODOWSKY, (Retired, Specially Assigned), JJ.

WILNER, J.

On April 28, 1983, appellant, Vernon Evans, for a fee of $9,000 to be paid by his friend, Anthony Grandison, murdered David Piechowicz and Susan Kennedy, deliberately, willfully, with premeditation, in cold blood. Grandison wanted Piechowicz and his wife, Cheryl, killed to prevent them from testifying against Grandison in a pending drug case in Federal Court, and he hired Evans to do the job.

The Piechowiczes were employed at the Warren House Motel. Unbeknownst to Evans, Cheryl was not at work that day; her sister, Ms. Kennedy, was substituting for her. Evans drove to the motel, walked into the lobby with a machine pistol, and fired nineteen bullets at the two victims. For those crimes, he was twice sentenced to death.[1] In affirming the

---

1. The first sentence was imposed following his trial in 1984. In 1991, that sentence was vacated in a post conviction proceeding because the sentencing form used in connection with the sentencing had been declared unconstitutional in *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct.

first of the death sentences, we observed that "[t]he murders giving rise to this prosecution were as heinous as those in any case to come before us under the present capital punishment statute. No killings could have been more premeditated and deliberate than those here." *See Evans v. State,* 304 Md. 487, 539, 499 A.2d 1261, 1288 (1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 722 (1986).

We have set forth the underlying facts and procedural history of the case often enough in the opinions disposing of the nine previous appeals by Evans, and there is no need to repeat them here. *See Evans v. State, supra,* 304 Md. 487, 499 A.2d 1261 and *Evans v. State,* 382 Md. 248, 855 A.2d 291 (2004), *cert. denied,* 543 U.S. 1150, 125 S.Ct. 1325, 161 L.Ed.2d 113 (2005). Before us in these two appeals—his tenth and eleventh in this Court—are two motions filed by Evans in the Circuit Court for Baltimore County to correct what he regards as an illegal sentence, both of which were denied. The first appeal (Misc. No. 18) is straightforward; the second (Misc. No. 3) has a more complex background. Neither has merit.

## I. *MISC. NO. 18 (PATERNOSTER)*

■ The motion at issue in Misc. No. 18 was based entirely on a statistical analysis conducted by Raymond Paternoster, a Professor of Criminology and Criminal Justice at the University of Maryland, which Evans claims establishes a pattern of racial and geographic discrimination in the implementation of the death penalty in Maryland. The Study, he avers, indicates that the chances of receiving a death sentence in Maryland are much greater if (1) the defendant is African–American, (2) the victim was white, and (3) the crime was committed in Baltimore County, all of which pertained to his case. That motion was filed on February 28, 2005, and was denied, without a hearing, on March 18, 2005.[2] Evans complains, first, that the

1860, 100 L.Ed.2d 384 (1988). Following a new sentencing proceeding, he was again sentenced to death.

**2.** Both sides agree that such a motion was filed and the docket entries also reflect the filing. The actual motion is not in the record before us,

motion was denied, and second, that it was denied without affording him the opportunity to conduct discovery.

In *Baker v. State*, 389 Md. 127, 883 A.2d 916 (2005), responding to precisely the same argument made by Wesley Baker, we held that a motion to correct an illegal sentence filed pursuant to Maryland Rule 4–345(a) was not the appropriate vehicle to raise this issue based on the Paternoster Study. We explained there, as we had in an earlier opinion in Evans's case, *Evans v. State, supra*, 382 Md. 248, 278, 855 A.2d 291, 309, that "a motion to correct an illegal sentence historically was entertained only where the alleged illegality was in the sentence itself or the sentence never should have been imposed," and that, where the sentence itself was lawful, such a motion was not appropriate. *Baker*, 389 Md. at 133, 883 A.2d at 919 (2005). There was nothing intrinsically illegal in Evans's sentence; he was properly found to be a principal in the first degree in two first degree murders for which the death penalty could lawfully be imposed, and the court properly found that the aggravating factors proved beyond a reasonable doubt outweighed any mitigating factors and that death was the appropriate sentence. *See Evans v. State*, 333 Md. 660, 637 A.2d 117 (1994), *cert. denied*, 513 U.S. 833, 115 S.Ct. 109, 130 L.Ed.2d 56 (1994).

We acknowledged in *Baker* that, in *Oken v. State*, 378 Md. 179, 184–86, 835 A.2d 1105, 1108, 1157–58 (2003), *cert. denied*, 541 U.S. 1017, 124 S.Ct. 2084, 158 L.Ed.2d 632 (2004), and in *Evans v. State, supra*, 382 Md. at 279, 855 A.2d at 309, we had recognized a limited exception to that general principle and had entertained a motion under Rule 4–345(a) where "in a capital sentencing proceeding, an alleged error of constitutional dimension may have contributed to the death sentence, at least where the allegation of error is partly based upon a decision of the United States Supreme Court or of this Court rendered after the defendant's capital sentencing proceeding." *Baker, supra*, 389 Md. at 136, 883 A.2d at 921, quoting from

---

however. Its absence is of no consequence, for its contents are well-described and not in dispute.

*Evans, supra.* We concluded, however, that the Paternoster Study did not constitute a decision of the United States Supreme Court or of this Court and that an allegation of error, even of Constitutional dimension, based on that Study, did not qualify under the limited exception.

We affirmed the denial of Baker's motion for that reason and shall do the same with respect to Evans's motion, which stands on no firmer ground. One collateral, but important, comment that we made in *Baker* bears repeating here:

> "Although for statistical purposes Baker's sentencing was included in the sweep of the Paternoster Study, there concededly is no conclusion drawn there that Baker's sentence specifically was influenced by any impermissible racial or geographic factors. Additionally, Dr. Paternoster stated in his testimony before the Senate Judicial Proceedings Committee on 9 January 2003, shortly after the initial study was released to the public: 'I would like to make it especially clear that these results [of the Study] do not mean that anyone is behaving in a racially discriminatory manner because I think there are other explanations for that.'"

*Baker, supra,* at 138 n. 14, 883 A.2d at 923 n. 14.

That is equally true with respect to Evans. Apart from what Evans chose to draw from the statistics compiled by Professor Paternoster, there is *nothing* in the record of this case to indicate that (1) the State's Attorney, in seeking and pursuing the death penalty against Evans, was in any way influenced by the fact that Evans is an African–American or that his victims were white, (2) any ruling by any judge presiding at any proceeding in the case was in any way influenced by those factors, or (3) any juror who sat in the case and voted to impose the death penalty was in any way influenced by those factors. Thus, not only has Dr. Paternoster disavowed any suggestion that his Study establishes racial discrimination on the part of anyone in any particular case, but, after 21 years of opportunity to investigate with respect to the first proceeding and 13 years of opportunity to investi-

gate with respect to the second, Evans has been unable to show that any such discrimination was at work in *this* case.

## II. *MISC. No. 3 (APPRENDI/RING)*

### A. *Background*

In *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362, 147 L.Ed.2d 435, 455 (2000), the Supreme Court, confirming, in part, a footnote in *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Although *Apprendi* was not a capital punishment case and it did not appear from the opinions filed by the five Justices forming the Majority that the holding was intended to invalidate the Maryland death penalty statute, or any other, Evans and others promptly contended that it had precisely that effect by making principalship (in cases where it needed to be established), aggravating factors, and the balancing of aggravating and mitigating factors elements of a separate crime of capital murder rather than merely sentencing factors to be applied on a conviction of classic first degree murder.

In April, 2001, Evans filed a motion in the Circuit Court for Baltimore County to reopen an earlier (1995) post conviction proceeding with the claim that, under *Apprendi,* the indictment that triggered his prosecution was fatally defective.[3] His argument was based more on the language of the footnote in *Jones* that "any fact (other than prior conviction) that increases the maximum penalty for a crime *must be charged in an indictment,* submitted to a jury, and proven beyond a reasonable doubt." *Jones v. United States, supra,* 526 U.S. at 243 n. 6, 119 S.Ct. at 1224 n. 6, 143 L.Ed.2d at 326 n. 6 (emphasis added). Notwithstanding that *Jones* was a Federal

---

**3.** The motion also asked that execution of the death sentence be stayed pending the Paternoster Study, which had been commissioned in 2000 and was expected to be completed in 2002.

prosecution and that in *Apprendi*, a State prosecution, the Court did not repeat the italicized language regarding the indictment, Evans contended that the indictment was deficient because it failed to charge "that he was a principal in the first degree in the two murders, that any of the aggravating factors in the Maryland statute were present, or that such factors would outweigh such mitigating factors as defendant might show." The Circuit Court denied the motion, and we denied Evans's application for leave to appeal. *Evans v. State*, Misc. No. 10, Sept. Term 2001 (Order). In the meanwhile, in *Borchardt v. State*, 367 Md. 91, 786 A.2d 631 (2001), *cert. denied*, 535 U.S. 1104, 122 S.Ct. 2309, 152 L.Ed.2d 1064 (2002) and *Baker v. State*, 367 Md. 648, 790 A.2d 629 (2002), *cert. denied*, 535 U.S. 1050, 122 S.Ct. 1814, 152 L.Ed.2d 817 (2002), we held that *Apprendi* did not invalidate any part of the Maryland death penalty statute.

While his motion to reopen the post conviction proceeding was still pending in the Circuit Court, Evans, in May, 2001, filed, in that court, a Motion to Correct Illegal Sentence and/or Motion for New Sentencing Based on Mistake and Irregularity. That motion was also based on *Apprendi*. Evans claimed that, under *Apprendi*, the determination that any aggravating factors found by the trier of fact to exist outweighed any mitigating factors had to be beyond a reasonable doubt and that the Maryland statute, which provided for that determination to be based on a preponderance of evidence, was unconstitutional.

In October, 2001, Evans filed yet another Motion to Correct Illegal Sentence, this time complaining that a 1983 statute that deleted a defendant's intoxication as an automatic mitigating factor but allowed a trier of fact to consider intoxication as a mitigating factor under the "catchall" provision then found in Maryland Code, Art. 27, § 413(g)(8) and now codified in Criminal Law Art. § 2–303(h)(2)(viii) constituted, as to Evans, who committed the murders prior to the effective date of the statute, an unlawful *ex post facto* law. The court heard argument on both motions in April, 2002. By then, Evans was aware that the Supreme Court had granted *certiorari* in *Ring*

*v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), to determine the effect of *Apprendi* on the Arizona death penalty law—indeed oral argument in *Ring* occurred four days after the hearing afforded Evans in the Circuit Court—and he asked the court to delay a ruling on the first motion pending the decision in *Ring*. The court agreed to reserve ruling on both motions pending further submissions from Evans.[4]

*Ring* was decided in June, 2002, and it clearly rendered suspect some, though not all, of the underpinnings of our decision in *Borchardt*. In November, 2002, Evans filed a supplement to his first motion, the one based on *Apprendi*, to add an argument under *Ring*. Much earlier, in May, 2000, Evans had filed a *pro se* Motion for New Trial based on newly discovered evidence—statements of witnesses that he claimed had been withheld in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that motion was still pending. A hearing was held on all of the pending motions on December 3, 2002, although the argument was devoted almost entirely to the Motion for New Trial based on newly discovered evidence. Indeed, neither the judge nor the prosecutors had received a copy of the November supplement to the other motion, dealing with *Apprendi* and *Ring*. The court agreed to hold the matters in abeyance until both sides could submit memoranda. Although both sides filed proposed findings of fact with respect to the Motion for New Trial based on newly discovered evidence, it is not clear whether additional memoranda were filed regarding the motions to correct illegal sentence. None are in the record.[5]

---

4. Evans had asked for a postponement of the April 18 hearing in order to collect additional evidence with respect to his May, 2000 Motion for New Trial. He stated that he had filed a Freedom of Information Act request to obtain FBI and U.S. Attorney documents relating to the federal investigation of the two murders and that those documents were relevant to that motion. The request for postponement was denied, as, ultimately, was the motion for new trial. We affirmed that ruling in *Evans v. State, supra*, 382 Md. 248, 855 A.2d 291.

5. Evans had filed a memorandum on the *Apprendi/Ring* issue in November, prior to the hearing.

On July 18, 2003, the court filed two memorandum opinions and orders—one disposing of the Motion for New Trial based on newly discovered evidence and the other disposing of the "Motion to Correct Illegal Sentence pursuant to Md. Rule 4–345." The second memorandum, dealing with the Motion to Correct Illegal Sentence, discussed only the *ex post facto* argument presented in the first Motion to Correct Illegal Sentence and did not address any of the *Apprendi/Ring* issues raised in the second such motion. The court concluded, however, that "[i]n the present case, Evans' death sentence is not an illegal sentence. The sentence is within the statutory authority of the court to impose. Evans received the maximum allowable penalty for first degree murder."

Evans appealed the court's rulings but treated the denial of the Motion to Correct Illegal Sentence as dealing only with the first motion raising the *ex post facto* issue. No argument was made in the appeal regarding the *Apprendi/Ring* issue, and that issue was not discussed in our opinion affirming the Circuit Court rulings. *See Evans v. State, supra,* 382 Md. 248, 855 A.2d 291.

Once the Supreme Court denied *certiorari* in that case, *Evans v. Maryland,* 543 U.S. 1150, 125 S.Ct. 1325, 161 L.Ed.2d 113 (2005), the State obtained a warrant of execution, directing execution of the death sentence during the week of April 18, 2005. That prompted another set of motions. On February 28, 2005, Evans moved to stay the warrant and filed the Motion to Correct Illegal Sentence based on the Paternoster Study, at issue in Misc. No. 18. In the motion to stay, Evans asserted that his earlier Motion to Correct Illegal Sentence based on *Apprendi/Ring* had not been ruled upon and was still pending. The motion based on the Paternoster Study was denied on March 18, and an appeal was noted. *See ante.*

On March 22, 2005, through counsel, Evans filed a second supplement to what he regarded as the still-pending Motion to Correct Illegal Sentence based on *Apprendi/Ring.* On the same day, acting *pro se,* he filed a new, separate Motion to

Correct Illegal Sentence, also based on *Apprendi/Ring*. The *pro se* motion raised the same issue presented in his April, 2001 motion to reopen the 1995 post conviction proceeding, namely, that the failure of the indictment to allege principalship or the aggravating factors upon which the State intended to rely rendered it Constitutionally defective.

The second supplement filed by counsel iterated Evans's complaint regarding use of the preponderance of evidence standard in balancing aggravating and mitigating factors but rested the complaint on Articles 16, 21, 23, 24, and 25 of the Maryland Declaration of Rights. Citing two decisions in the Circuit Court for Anne Arundel County that, due to the unusual procedure used by that court to effect those decisions, we were precluded from reviewing (*see State v. Manck*, 385 Md. 581, 870 A.2d 196 (2005)), he argued as well that, under both the Fourteenth Amendment to the U.S. Constitution and Article 21 of the Maryland Declaration of Rights, the indictment against him was deficient for failing to allege principalship or the aggravating factors.

On March 29, 2005, the court filed a ruling on the second supplement. With respect to the argument dealing with the balancing of aggravating and mitigating factors, the court concluded that (1) it had ruled on that issue in its July 18, 2003 order denying the Motion to Correct Illegal Sentence, and (2) it was, in any event, without merit. The court stated that its July 18, 2003 ruling "was based upon all issues raised by the Defendant in his Motion and Supplements thereto, regardless of whether the Court elaborated on its reasoning for the denial" and that "[s]pecifically, Argument A of the Defendant's Second Supplement regarding the burden of proof in the weighing process at sentencing was rejected by this Court in its order of July 18, 2003." With respect to the second argument, claiming a deficient indictment, the court concluded that that argument had not been previously raised or addressed in any of Evans's motions to correct illegal sentence but it found, for the reasons offered by the State in its Answer to the Second Supplement, that the argument had no merit. An appeal was noted from that ruling.

## B. *Issues*

Evans presents three issues:

(1) Evans's indictment failed to allege principalship in the first degree or the existence of any aggravating circumstances, making capital punishment unavailable as a sentence for the crime of which Evans was convicted;

(2) The relaxed evidentiary standard at Evans's resentencing violated fair-trial guarantees that, after *Ring*, attach to the determination of principalship and aggravating circumstances; and

(3) The burden of proof used at sentencing for the balancing of aggravating and mitigating circumstances violated the Maryland and Federal Constitutions.

The State denies that any of these propositions has merit, but points out, in addition, that (1) Evans's appeal with respect to the *Apprendi/Ring* issues is untimely and should be dismissed on that ground; (2) *Ring* provides no solace because it is not retroactive and does not, therefore, apply to Evans; and (3) the complaint regarding the evidentiary standard was not raised or decided below and is therefore not properly before us.

## C. *Procedural Defenses*

The State's position that the appeal is untimely mirrors the view of the Circuit Court, expressed in its March 29, 2005 ruling, that the validity of the preponderance of evidence standard used in the balancing process was resolved in the court's July 18, 2003 order, and that it is therefore too late to appeal that ruling. There is no doubt that both the State and the court believed that to be the case, that the July, 2003 order did, indeed, resolve all issues then pending before the court, including the *Apprendi/Ring* issue. Unfortunately, the record itself is at least ambiguous in that regard.

There were two separate motions to correct illegal sentence pending before the court, one dealing with the alleged *ex post facto* effect of the 1983 statute removing intoxication as a statutory categorical mitigating circumstance and

the other with the validity of the preponderance standard in the balancing process. Whatever the court may have intended, its memorandum addressed only the *ex post facto* issue and its order speaks to the denial of only one motion, not two. The docket entry is consistent: "Order of Court that the Defendant's Motion [not Motions] to Correct Illegal Sentence is [not *are* ] hereby Denied." Such a record could easily have misled Evans into reasonably believing that the separate motion raising the *Apprendi* issue remained pending and that no appeal on that issue was then possible. If the court intended to deny both motions, it should have made that intent clear in its July, 2003 order, so that the Clerk could have made that intent manifest on the docket. On the state of this record, we hold that the motion raising the *Apprendi/Ring* issue was not resolved in July, 2003, that it remained pending until denied, as being without merit, in the March 29, 2005 order, and that the first issue raised in this appeal is therefore properly before us.

The State also points out that, notwithstanding the Circuit Court's belief that Evans's claim that the indictment was deficient had not previously been raised or adjudicated, that claim had, in fact, been raised and decided when the Circuit Court denied his April, 2001 motion to reopen the 1995 post conviction proceeding, a ruling that, in denying his application for leave to appeal, we left undisturbed. *See Evans v. State, supra,* Misc. No. 10, Sept. Term 2001 (Order). The State is correct, to a point. The issue raised in that motion was based only on *Apprendi*. *Ring* had not yet been decided. The claim here is based primarily on *Ring*. *Ring* was not just a confirmation of *Apprendi*. It focused entirely on capital punishment schemes, which the *Apprendi* Court had indicated it was *not* addressing, and put a new gloss on the procedure for resolving principalship and aggravating factor issues. Although the general issue was the same, *Ring* added a significantly new dimension to it that could not have been adequately addressed under just *Apprendi*. *Compare Borchardt v. State, supra,* 367 Md. 91, 786 A.2d 631, with *Oken v. State, supra,* 378 Md. 179, 835 A.2d 1105.

■ We acknowledge the State's argument, based on *Schriro v. Summerlin,* 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) and *Hughes v. State,* 901 So.2d 837 (Fla.2005), that *Ring* is not to be applied retroactively. We need not address that issue in this case, as we shall conclude that, even if *Ring were* applicable, it would provide no relief to Evans. As to Evans's complaint about the evidentiary standard used at the sentencing hearing, it is true, as the State contends, that Evans never raised that issue in the Circuit Court and has therefore failed to preserve it. In order to forestall the inevitable claim that his eminently competent and diligent attorneys rendered Constitutionally deficient performance in not raising that issue, however, we shall address it.

### D. *Validity of the Indictment*

■ Maryland Code, § 2–208(a) of the Criminal Law Article, provides that an indictment for murder is sufficient if it substantially states that "(name of defendant) on (date) in (county) feloniously (willfully and with deliberately premeditated malice) killed (and murdered) (name of victim) against the peace, government, and dignity of the State." At the time of Evans's indictment, that statute appeared, in substantially the same form, as § 616 of Art. 27 of the Code. *See also* Maryland Rule 4–202. There is no exception in the statute for cases in which the State seeks the death penalty, and there is no dispute that the indictment against Evans complied with the statutory requirements. The first and second counts alleged that Evans "feloniously, wilfully and of deliberately premeditated malice aforethought did kill and murder" David Piechowicz and Susan Kennedy "against the peace, government and dignity of the State."

Under the statutes in effect when Evans was indicted (Art. 27, §§ 412 and 413) and under the current law (Criminal Law Article, § 2–202), a defendant found guilty of murder in the first degree may be sentenced to death only if (1) at least 30 days before trial, the State gave the defendant written notice of (i) its intention to seek the death penalty and (ii) each aggravating factor on which it intended to rely, (2) with

exceptions not relevant here, the defendant was a principal in the first degree, and (3) the sentence of death is imposed in accordance with other statutory requirements, now set forth in § 2–303 of the Criminal Law Article, then codified in § 413 of Art. 27. In relevant part, those statutes require, as a condition to imposition of the death penalty, that the jury (or judge, if sentencing by a judge is elected by the defendant) finds beyond a reasonable doubt at least one of the aggravating factors listed in the State's notice and further finds, by at least a preponderance of the evidence, that any such aggravating factors so found outweigh any mitigating factor(s) found to exist.

In September, 1983, the State provided Evans with timely written notice that it intended to seek the death penalty if he was found guilty of the murders under the indictment and that it intended to rely on two aggravating factors allowed under the statute: that Evans committed the murders pursuant to an agreement or contract for remuneration (former § 413(d)(6) of Art. 27, current § 2–303(g)(vi) of the Criminal Law Article) and that he committed more than one murder in the first degree arising out of the same incident (former § 413(d)(9) of Art. 27, current § 2–303(g)(ix) of the Criminal Law Article).

Evans does not dispute that the Notice complied with the statutory requirements. He also does not dispute that the jury in the second proceeding—the one at issue here—found beyond a reasonable doubt that he was a principal in the first degree in the two murders and that the two aggravating circumstances relied on by the State existed, and that the jury also found those aggravating factors to outweigh the one mitigating factor (drug influence) that one or more but less than all of the jurors found to exist. His argument is that none of that matters—that, because the *indictment* did not allege either his principalship or the two aggravating factors, it was fatally deficient under *Apprendi* and *Ring* and could not serve as the basis for a prosecution for which the death penalty was sought. His argument is grounded on both the Federal and State Constitutions.

The Federal rights allegedly violated arise from the Fifth and Sixth Amendments, in particular the clauses in the Fifth Amendment prohibiting the deprivation of life, liberty, or property without due process of law and the first clause that "[n]o person shall be held to answer for a capital, or other infamous crime, unless on a presentment or indictment of a Grand Jury," and the requirement in the Sixth Amendment that, in all criminal prosecutions, the accused has the right "to be informed of the nature and cause of the accusation."

In *Jones v. United States, supra,* 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 1224 n. 6, 143 L.Ed.2d 311, 326 n. 6, a Federal prosecution to which the Fifth and Sixth Amendments directly applied, the Court stated its core holding as follows: "Under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Based on *Apprendi* and *Ring,* Evans maintains that both principalship and any aggravating factors relied upon by the State constitute elements of the crime of capital murder, elements that serve to increase the maximum penalty otherwise available upon a conviction of first degree murder, and that they must therefore be alleged in the indictment and found by a jury beyond a reasonable doubt. There is no question here that those "elements" were found by a jury beyond a reasonable doubt; the only issue is whether they needed to be alleged in the indictment.

■ The simple answer is that, although the general requisites implicit in the due process clause of the Fifth Amendment are applicable to the States through the comparable clause of the Fourteenth Amendment, any requirement implicit in the Fifth or Sixth Amendment that elements of a criminal offense be alleged in a presentment or indictment returned by a Grand Jury has been found inapplicable to State prosecutions. *See Alexander v. Louisiana,* 405 U.S. 625, 633, 92 S.Ct. 1221, 1226–27, 31 L.Ed.2d 536, 543–44 (1972) ("Although the

Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury"); *Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884); *Baker v. State, supra,* 367 Md. at 683–90, 790 A.2d at 650–54, confirming *Bowers v. State,* 298 Md. 115, 468 A.2d 101 (1983). Nothing in *Apprendi* or *Ring* alters that conclusion.

The *Apprendi* Court made expressly clear that it was not addressing that issue. *See Apprendi, supra,* 530 U.S. at 477 n. 3, 120 S.Ct. at 2355 n. 3, 147 L.Ed.2d at 447 n. 3 (Fourteenth Amendment "has not been construed to include the Fifth Amendment right to 'presentment or indictment of a Grand Jury'" and the Court declined to "address the indictment question separately today"). Indeed, it is noteworthy that, in confirming the essence of its footnote in *Jones,* the *Apprendi* Court, aware that it was dealing with a State prosecution, dropped any reference to the need to include elements in an indictment. *See Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362–63, 147 L.Ed.2d at 455.

*Ring* was based solely on the Sixth Amendment right of jury trial and did not address any issue regarding the necessity or validity of an indictment. *See Ring, supra,* 536 U.S. at 588, 122 S.Ct. at 2432, 153 L.Ed.2d at 563 ("This case concerns the Sixth Amendment right to a jury trial in capital prosecutions"); *Id.* at 597 n. 4, 122 S.Ct. at 2437 n. 4, 153 L.Ed.2d at 569 n. 4 ("Ring's claim is tightly delineated. He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him"); and *Id.* at 609, 122 S.Ct. at 2443, 153 L.Ed.2d at 576–77 ("For the reasons stated, we hold that *Walton* and *Apprendi* are irreconcilable; our Sixth Amendment jurisprudence cannot be home to both. Accordingly, we overrule *Walton to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty* "). (Emphasis added).

Nothing in either case purported to disturb the long-established view of the Supreme Court that any requirement

emanating from the Fifth or Sixth Amendments that a criminal charge, or the elements of a criminal charge, be stated in a grand jury indictment was not applicable to prosecutions in State courts. Under *Ring,* principalship and aggravating factors are no longer regarded as mere sentencing factors, but as matters to be determined by a jury (unless a jury trial is properly waived) beyond a reasonable doubt, but that does not, *ipso facto,* mean that they have to be alleged in an indictment. That has been the view expressed by every State court, save New Jersey, that has considered the effect of *Ring* on the indictment issue. *See McKaney v. Foreman,* 209 Ariz. 268, 100 P.3d 18, 22–23 (2004) (en banc) ("All state jurisdictions with one exception have thus far held, as we hold today, that aggravating factors need not be specified or alleged in the indictment"); *Stallworth v. State,* 868 So.2d 1128, 1186 (Ala. Crim.App.2001) (*on return to second remand*), *cert. denied,* 868 So.2d 1189 (2003), *cert. denied,* 540 U.S. 1057, 124 S.Ct. 828, 157 L.Ed.2d 711 (2003); *Banks v. State,* 842 So.2d 788, 793 (Fla.2003); *Terrell v. State,* 276 Ga. 34, 572 S.E.2d 595, 602 (2002), *cert. denied,* 540 U.S. 835, 124 S.Ct. 88, 157 L.Ed.2d 64 (2003); *People v. McClain,* 343 Ill.App.3d 1122, 278 Ill.Dec. 604, 799 N.E.2d 322, 336 (2003), *appeal denied,* 206 Ill.2d 636, 282 Ill.Dec. 482, 806 N.E.2d 1070 (2003); *Soto v. Commonwealth,* 139 S.W.3d 827, 842 (Ky.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 1670, 161 L.Ed.2d 495 (2005); *St. Clair v. Commonwealth,* 140 S.W.3d 510, 559–60 (Ky.2004); *Stevens v. Mississippi,* 867 So.2d 219, 227 (Miss.2003), *cert. denied,* 543 U.S. 858, 125 S.Ct. 222, 160 L.Ed.2d 96 (2004); *State v. Edwards,* 116 S.W.3d 511, 543–44 (Mo.2003) (en banc), *cert. denied,* 540 U.S. 1186, 124 S.Ct. 1417, 158 L.Ed.2d 92 (2004); *State v. Hunt,* 357 N.C. 257, 582 S.E.2d 593, 602–07 (2003), *cert. denied,* 539 U.S. 985, 124 S.Ct. 44, 156 L.Ed.2d 702 (2003); *Primeaux v. State,* 88 P.3d 893, 899–900 (Okla. Crim.App.2004), *cert. denied,* 543 U.S. 944, 125 S.Ct. 371, 160 L.Ed.2d 257 (2004); *State v. Oatney,* 335 Or. 276, 66 P.3d 475, 487 (2003), *cert. denied,* 540 U.S. 1151, 124 S.Ct. 1148, 157 L.Ed.2d 1045 (2004); *State v. Edwards,* 810 A.2d 226, 234 (R.I.2002), *cert. denied,* 538 U.S. 980, 123 S.Ct. 1808, 155 L.Ed.2d 670 (2003); *Moeller v. Weber,* 689 N.W.2d 1, 19–22

(S.D.2004); *State v. Berry*, 141 S.W.3d 549, 560 (Tenn.2004); *compare State v. Fortin*, 178 N.J. 540, 843 A.2d 974 (2004). We decline to follow *Fortin* and confirm our holdings in *Bowers* and *Baker*.

▇ Evans's argument under Article 21 of the Md. Declaration of Rights and Maryland common law fares no better. The common law argument emanates from Article 5 of the Declaration of Rights which, among other things, guarantees to the inhabitants of Maryland the common law of England in effect on July 4, 1776, "subject, nevertheless, to the revision of, and amendment or repeal by, the Legislature of this State." To the extent that the English common law, as extended by decisions of this Court, might ever have required principalship or aggravating factors to be alleged in an indictment, the General Assembly is competent to change that law, *see Heath v. State*, 198 Md. 455, 464, 85 A.2d 43, 47 (1951), and it clearly has done so by providing for those factors to be alleged in a separate Notice.

▇ Article 21 provides, in relevant part, that "in all criminal prosecutions, every [person] hath a right to be informed of the accusation against him [or her]; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his [or her] defence."

In furtherance of that provision, we have held that a charging document ordinarily must allege all essential elements of the criminal offense intended to be charged, in order (1) to give the defendant fair notice of what he or she is called upon to defend, (2) to protect the accused from a subsequent prosecution for the same offense, (3) to enable the defendant to prepare for trial, (4) to provide a basis for the court to consider the legal sufficiency of the indictment, and (5) to inform the court of the crime charged so that any sentence will relate to that crime. *See Campbell v. State*, 325 Md. 488, 601 A.2d 667 (1992); *Ayre v. State*, 291 Md. 155, 433 A.2d 1150 (1981).

▇ As we pointed out in *Heath, supra*, 198 Md. at 464, 85 A.2d at 47, however, Article 21 does not require that there be

an indictment; nor does it specify the form that an indictment must take, but merely "confers the substantial right to be apprised of the charge on which the accused stands trial." As noted, Evans's argument is that, under *Ring*, principalship and aggravating factors constitute elements of the separate crime of capital murder, that all elements of a crime must be alleged in the charging document, and, citing *Busch v. State*, 289 Md. 669, 426 A.2d 954 (1981); *Duncan v. State*, 282 Md. 385, 384 A.2d 456 (1978); *State v. Mulkey*, 316 Md. 475, 560 A.2d 24 (1989); *Ayre v. State, supra*, 291 Md. 155, 433 A.2d 1150, and two decisions of the Circuit Court for Anne Arundel County, *State v. Abend* and *State v. Henry*, he posits that sources extrinsic to the indictment are immaterial in determining its sufficiency or insufficiency.

We have previously held that the form of indictment used in this case was legally sufficient under Article 21 in a death penalty case. In *Collins v. State*, 318 Md. 269, 297, 568 A.2d 1, 14 (1990), *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 805 (1990), we held expressly that Art. 21 does not require that the statutory notice specifying the aggravating factors alleged by the State be part of or appended to the indictment. *See also Baker v. State, supra*, 367 Md. at 686–90, 790 A.2d at 651–54 ("Baker was notified well before trial that his case was a capital case and he was also notified of the aggravating circumstance upon which the State intended to rely. The information that Baker contends made the indictment invalid was provided to him through the notice required by [Article 27] section 412(b).").

We see nothing in *Ring* that requires a different construction of Article 21. The point of that provision is to give fair and adequate notice, and, as we made clear in both *Collins* and *Baker*, that notice may come from the statutory Notice. That Notice, to be filed by the State's Attorney at least 30 days before trial, serves every purpose, to the same degree, as would an indictment containing those averments. It gives the defendant fair notice of what must be defended; coupled with the indictment, it protects the defendant from a subsequent prosecution for the same offense; it enables the defendant to

prepare for both phases of the trial; to the extent relevant, it provides a basis for the court to consider the legal sufficiency of the indictment; and it informs whether and under what circumstances a death sentence is permissible. There is no prejudice to a defendant from this overall statutory approach.

The cases relied upon by Evans do not compel a different result. In *Busch,* the offense allegedly charged was resisting arrest, but the body of the charging document did not allege that the defendant had resisted an arrest, only that he hindered a police officer in the lawful execution of his duties. We held that the deficiency could not be cured by the fact that the indictment was captioned "Resisting Arrest." *Busch, supra,* 289 Md. at 678–79, 426 A.2d at 959. We noted that "the caption of an offense appearing in a charging document does not determine the character of the offense alleged to have been committed by the accused." *Id.* In *Ayre,* the statutory offense was knowingly selling any obscene matter. The charging document failed to allege that the magazine sold by the defendant contained obscene matter or that he knowingly sold obscene matter. Those deficiencies, we held, were not cured by the fact that the charging document referenced the statute. We noted, in that regard, that reference to the statute "does not supply the missing elements" and that, if the law were otherwise, it "would obviate the necessity of alleging *any* material element of the offense." *Ayre, supra,* 291 Md. at 167–68, 433 A.2d at 1158 (emphasis in original).

Neither *Duncan v. State* nor *State v. Mulkey, supra,* 316 Md. 475, 560 A.2d 24 do anything to assist Evans. *Duncan* is not at all in point. In *Mulkey,* we reversed an order of the Circuit Court dismissing an indictment charging child sexual offenses for lack of particularity. If there is any relevance in that case, it must be our observation that, ordinarily, "a bill of particulars forms no part of the indictment and cannot be applied to cure a defective indictment." *Id.* at 489, 560 A.2d at 30. We explained the rationale for that conclusion in *State v. Lassotovitch,* 162 Md. 147, 158, 159 A. 362, 366–67 (1932):

"It would be illogical to hold that an accused must demand a bill of particulars in order to perfect a legal charge against

him, and such is not the requirement. The rule allowing a bill of particulars is for the benefit of the accused. He may, but is not bound to, request it; and if he does not, he is entitled to attack the validity of the charge as made out by the indictment. To hold otherwise would be to say that no indictment could be attacked by demurrer by an accused, for vagueness or indefiniteness of its allegations, without first demanding a bill of particulars."

The problems evident in *Busch, Ayre,* and *Lassotovitch* do not appear in this case. The indictment properly set forth a charge of first degree murder in conformance with § 2–208 of the Criminal Law Article, and the Notice filed pursuant to §§ 2–202 and 2–303(b) of that Article adequately informed Evans of all additional "elements" needed to warrant the death penalty. Most of the courts that have considered the effect of *Ring* on their own State law have come to the same conclusion: that it has no effect. *See McKaney v. Foreman, supra,* 100 P.3d at 21, and the other cases cited above with respect to the effect of *Ring* on the Federal right to an indictment. To the extent that *State v. Abend* and *State v. Henry* reach a different conclusion, they are wrong. The indictment in this case was not deficient.

### E. *Evidentiary Standards Applied At Sentencing*

■■■ Former Maryland Code, Article 27, § 413(c) (currently codified as Criminal Law Article, § 2–303(e)) made admissible at a death penalty sentencing proceeding evidence relating to mitigating or aggravating circumstances, evidence of prior criminal convictions or the absence of such convictions, a presentence investigation report (other than a recommendation as to sentence), and "any other evidence the court finds to have probative value and relevance to sentencing, provided the defendant is accorded a fair opportunity to rebut any statements." [6] Evans acknowledges that we have, on several occasions, found no Constitutional problem with those somewhat

---

6. Probative value and relevance may be the key criteria for purposes of the statute, but Maryland Rule 5–403 also applies, as it does to all

relaxed statutory evidentiary rules. *See Conyers v. State,* 354 Md. 132, 175, 729 A.2d 910, 933 (1999), *cert. denied,* 528 U.S. 910, 120 S.Ct. 258, 145 L.Ed.2d 216 (1999); *Bruce v. State,* 328 Md. 594, 630–31, 616 A.2d 392, 410 (1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2936, 124 L.Ed.2d 686 (1993); *Booth v. State,* 327 Md. 142, 160–61, 608 A.2d 162, 170–71 (1992), *cert. denied,* 506 U.S. 988, 113 S.Ct. 500, 121 L.Ed.2d 437 (1992). *See also Hunt v. State,* 321 Md. 387, 431–32, 583 A.2d 218, 239 (1990), *cert. denied,* 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991) and *State v. Colvin,* 314 Md. 1, 17–18 n. 5, 548 A.2d 506, 514 n. 5 (1988). Nonetheless, he contends that, under *Ring,* that conclusion is no longer valid, and that, notwithstanding that a jury has found the elements of first degree murder, "the defendant remains innocent of the greater crime of capital murder" and that "[t]he additional elements necessary to convict a defendant of *that* crime—*i.e.* principalship and aggravating circumstances—therefore must be proved under the rules of evidence established for, and subject to the requirements of the Sixth, Eighth, and Fourteenth Amendments (and the parallel state guarantees) applicable to, the determination of guilt or innocence in criminal cases."

 Evans never raised this issue at his sentencing proceeding. Indeed, he acknowledges that he failed to mount any defense to the State's claim of principalship or to the two aggravating factors posited by the State. He blames that, 13 years later, on the fact that lower evidentiary standards were applicable. He complains, in particular, about the admission of a pre-sentence investigation report, his prison records, and victim impact statements, all declared admissible by statute.

---

evidence offered in court. *Hunt v. State,* 321 Md. 387, 425, 583 A.2d 218, 236 (1990) (during capital sentencing, "[e]ven relevant evidence may be excluded if its prejudicial effect substantially outweighs its probative value"). *See also Conyers v. State, supra,* 354 Md. at 181, 729 A.2d at 936 (recognizing that Md. Rule 5–403 applies to capital sentencing proceedings). That Rule makes clear that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of *unfair* prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." (Emphasis added).

This issue has been raised elsewhere, in both Federal and State courts, and it has been universally rejected. *See United States v. Fell,* 360 F.3d 135 (2nd Cir.2004), *cert. denied,* 543 U.S. 946, 125 S.Ct. 369, 160 L.Ed.2d 259 (2004); *United States v. Lee,* 374 F.3d 637 (8th Cir.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 2962, 162 L.Ed.2d 892 (2005); *United States v. Rodriguez,* 380 F.Supp.2d 1041, 1053–54 (D.N.D.2005); *United States v. Johnson,* 378 F.Supp.2d 1051, 1069 (N.D.Iowa 2005); *United States v. Sampson,* 332 F.Supp.2d 325 (D.Mass.2004); *United States v. Taylor,* 302 F.Supp.2d 901, 905 (N.D.Ind. 2003); *United States v. Battle,* 264 F.Supp.2d 1088, 1105–07 (N.D.Ga.2003); *United States v. Haynes,* 269 F.Supp.2d 970, 985–87 (W.D.Tenn.2003); *United States v. Matthews,* 246 F.Supp.2d 137, 142 (N.D.N.Y.2002); *United States v. Lentz,* 225 F.Supp.2d 672, 682–83 (E.D.Va.2002); *State v. Reid,* 164 S.W.3d 286, 319 (Tenn.2005); *Ploof v. State,* 856 A.2d 539, 544 (Del.2004). The rationale, explained in *Fell* and *Lee,* is that the relaxed standard, allowed as well under the Federal Death Penalty Act, "does not impair the reliability of the evidence admissible during the penalty phase . . . Rather, the admission of more rather than less evidence during the penalty phase increases reliability by providing full and complete information about the defendant and allowing for an individualized inquiry into the appropriate sentence for the offense." *United States v. Lee, supra,* 374 F.3d at 648.

We are in agreement with those decisions. The relaxed standards were designed largely for the defendant's benefit, both to allow the defendant to offer evidence in support of mitigating factors or to defend against or ameliorate aggravating factors that might otherwise be inadmissible and, as noted in *Lee,* to allow the jury to have a more complete picture of the defendant. The proper application of Rule 5–403 can serve as a brake on evidence that is unduly prejudicial.

### F. *Balancing of Aggravating and Mitigating Circumstances*

Evans's final complaint deals with the standard by which the jury must find that any aggravating circumstance(s)

found beyond a reasonable doubt outweigh any mitigating factor(s). Maryland statutory law requires that the determination be made by a preponderance of the evidence. *See* former Maryland Code, Art. 27, § 413(h), current Criminal Law Article, § 2–303(i). Evans contends that, under *Apprendi* and *Ring*, that standard is unconstitutional—that the determination is required by the Sixth and Fourteenth Amendments to the U.S. Constitution and by Articles 16, 21, 23, 24, and 25 of the Maryland Declaration of Rights to be made beyond a reasonable doubt. We addressed that precise issue in *Oken v. State, supra,* 378 Md. 179, 835 A.2d 1105 and found no merit in it. Evans has not persuaded us that our decision in *Oken* was wrong, and we therefore confirm it.

**IN MISC. NO. 18, ORDER OF CIRCUIT COURT FOR BALTIMORE COUNTY OF MARCH 18, 2005 AFFIRMED, WITH COSTS; IN MISC. NO. 3, ORDER OF CIRCUIT COURT FOR BALTIMORE COUNTY OF MARCH 29, 2005 AFFIRMED, WITH COSTS.**

RAKER, J., dissenting, in which BELL, C.J., and GREENE, J., join:

I would reverse the death sentence, affirm the guilty verdicts, and affirm the prison sentences in this case. I would remand for a new sentencing proceeding on the murder conviction.

My reasons for dissenting are essentially the same reasons as expressed in *Borchardt v. State,* 367 Md. 91, 786 A.2d 631 (2001) (Raker, J., dissenting, joined by Bell, C.J. and Eldridge, J.), *Oken v. State,* 378 Md. 179, 835 A.2d 1105 (2003) (Raker, J., dissenting, joined by Bell, C.J. and Eldridge, J.), and *Miller v. State,* 380 Md. 1, 843 A.2d 803 (2004) (Raker, J., concurring in part and dissenting in part, joined by Bell, C.J., and Eldridge, J.). I would hold that the portion of Maryland Code (1957, 1996 Repl.Vol.) Art. 27, § 413(h)[1] that provides

---

1. This case was tried prior to the 2002 Code recodification. For that reason, unless otherwise indicated, all statutory references are to Maryland Code (1957, 1996 Repl.Vol.), Art. 27.

that the punishment shall be death if the sentencing authority[2] finds that the aggravating factors outweigh the mitigating factors by a preponderance of the evidence violates due process under the Fourteenth Amendment and the Sixth Amendment of the United States Constitution and Article 24 of the Maryland Declaration of Rights. I would sever the unconstitutional portion of the statute, require the beyond a reasonable doubt standard to be applied as a matter of law, vacate appellant's sentence of death imposed pursuant to § 413 and remand for a new sentencing hearing.

The Maryland death penalty statute requires the State to give notice of an intent to seek the death penalty and to allege in that notice the existence of a statutory aggravating factor. § 412(b)(1)(i). With the exception of a contract murder and the killing of a law enforcement officer, the jury must find that the State has proven, beyond a reasonable doubt, that the defendant was a principal in the first degree. § 413(d)(7), (e)(1). The jury must then make three findings for a death sentence to be imposed. First, the jury must find that the State has proven, beyond a reasonable doubt, the existence of at least one aggravating factor. § 413(d), (f). Second, the jury must then consider and find, by a preponderance of the evidence, whether one or more mitigating circumstances exist. § 413(g). Third, the jury must also find that the aggravating factors outweigh the mitigating factors. § 413(h)(1). The statute states that "the sentence shall be death" if the jury finds that the aggravating factors outweigh the mitigating factors by a preponderance of the evidence. § 413(h)(2). This finding is a necessary predicate to the imposition of a sentence of death. In my view, the jury must find this last and ultimate finding beyond a reasonable doubt.

*Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and *Apprendi v. New Jersey*, 530 U.S. 466, 120

---

**2.** Future references to the sentencing authority will be to a jury, with the recognition that the defendant may waive the right to have the sentence determined by a jury and may elect to have the court sentence. *See* § 413(b)(3), (k)(3).

S.Ct. 2348, 147 L.Ed.2d 435 (2000), in the framework of the Maryland death penalty statute, mandate that the jury must find that aggravating factors outweigh mitigating factors beyond a reasonable doubt and not by a mere preponderance of the evidence. *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. at 2362–63. *Ring* made clear that *Apprendi* applied to death penalty proceedings, reasoning that "[c]apital defendants, no less than non-capital defendants … are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Ring,* 536 U.S. at 589, 122 S.Ct. at 2432.

Life imprisonment is the maximum sentence for first degree murder in Maryland. The penalty for first degree murder in Maryland is "death, imprisonment for life, or imprisonment for life without the possibility of parole." § 412(b). Life imprisonment without the possibility of parole and death are enhanced penalties and may not be imposed unless the State satisfies the statutory requirements of § 413 justifying enhancement. *Id.* The statute requires that before a sentence of death may be imposed, the jury must make certain additional findings beyond the finding of guilt of the murder. Those findings increase the maximum penalty from life imprisonment to death. It is the jury finding that aggravating circumstances outweigh mitigating circumstances that increases the penalty for first degree murder in Maryland beyond the prescribed statutory maximum. *See Johnson v. State,* 362 Md. 525, 529, 766 A.2d 93, 95 (2001) (holding that "basic sentence" for first degree murder is life imprisonment and that life without parole and death are enhanced penalties); *Gary v. State,* 341 Md. 513, 520, 671 A.2d 495, 498 (1996) (holding that maximum penalty for first degree murder is life imprisonment). Because the default penalty for first degree murder in Maryland is life imprisonment, a jury's determination that aggravating circumstances outweigh mitigating circumstances is an additional finding beyond that of guilt that

serves to make a defendant eligible for the enhanced penalty of death. *Ring* and *Apprendi* require that such a finding be made beyond a reasonable doubt.

The *Ring* Court pointed out that every fact that the legislature requires before death may be imposed be found by a jury beyond a reasonable doubt. The Court reiterated that "the dispositive question ... 'is one not of form, but of effect.'" *Ring,* 536 U.S. at 602, 122 S.Ct. at 2439, 153 L.Ed.2d at 572 (quoting *Apprendi,* 530 U.S. at 494, 120 S.Ct. at 2365, 147 L.Ed.2d at 457). The Court stated:

> "If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt."

*Id.* Thus, under *Ring,* a substantive element of a capital offense is one that makes an increase in authorized punishment contingent on a finding of fact. Using this description, before the death penalty may be mandated in Maryland, the jury must find the existence of one or more aggravating circumstances *and* that the aggravators outweigh the mitigators. It is the latter finding, that aggravators outweigh mitigators, including the determination that death is appropriate, that ultimately authorizes jurors to consider and then to impose a sentence of death. That is, the increase in punishment from life imprisonment to the death penalty is contingent on the factual finding that the aggravators outweigh the mitigators. Under the death penalty statute, then, when the jury finds that the aggravating outweigh the mitigating circumstances, the defendant is exposed to an increased potential range of punishment beyond that for a conviction for first degree murder. *See Harris v. United States,* 536 U.S. 545, 567, 122 S.Ct. 2406, 2419, 153 L.Ed.2d 524 (2002) (plurality opinion) ("Read together, *McMillan* and *Apprendi* mean that those facts setting the outer limits of a sentence, and of the judicial power to impose it, are the elements of the crime for the purposes of the constitutional analysis").

In an attempt to escape the conclusion that *Ring* requires every factual finding necessary for imposition of the death

penalty to be found beyond a reasonable doubt, some courts have portrayed the balancing of aggravating and mitigating factors as a nonfactual determination. *See, e.g., Commonwealth v. Roney,* 581 Pa. 587, 866 A.2d 351, 360 (2005) (stating that *Ring* and *Apprendi* "narrowly focused on a jury's fact-finding responsibility and did not involve any question concerning whether the 'beyond a reasonable doubt' standard applies to a jury's *weighing* of the aggravating and mitigating circumstances *after* the defendant has been found eligible for the death penalty"). The balancing of the aggravating and mitigating factors, however, is a factual finding of the sort *Ring* and *Apprendi* require to be proved beyond a reasonable doubt.

Three aspects of the Maryland death penalty statute show that all three steps in the death penalty scheme are factual in nature. First, the General Assembly has provided for a burden of proof in the weighing process. Such standards of proof are reserved customarily for factual findings. *See Olsen v. State,* 67 P.3d 536, 589 (Wyo.2003) (stating that language in Wyoming death penalty statute "that aggravating circumstances be proved beyond a reasonable doubt and mitigating circumstances be proved by a preponderance of the evidence *references burdens assigned to factual issues* " (emphasis added)). Second, this Court is mandated under § 414(e)(3) to review the jury finding of death for sufficiency of the evidence, which involves determining whether the evidence before the trier of fact was sufficient to support its *factual findings. See Polk v. State,* 378 Md. 1, 7–8, 835 A.2d 575, 579 (2003). Finally, the repeated use of the word "find" suggests the determination of an observable fact. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 852 (1961) (defining "finding" as "the result of a judicial or quasi-judicial examination or inquiry esp[ecially] into matters of fact as embodied in the verdict of a jury or decision of a court, referee, or administrative body").

In addition to affronting the guarantee of federal due process, Maryland's death penalty scheme violates Article 24 of

the Maryland Declaration of Rights and the basic principles of fundamental fairness guaranteed by the State Constitution. Article 24 of the Maryland Declaration of Rights provides, in pertinent part, "That no man ought to be ... deprived of his life, liberty or property, but ... by the Law of the land." Long before *Apprendi*, Maryland law recognized that any fact relating to the circumstance of an offense that exposed a defendant to enhanced punishment had to be determined by the trier of fact beyond a reasonable doubt. *See, e.g., Fisher v. State*, 367 Md. 218, 280–82, 786 A.2d 706, 743–44 (2001) (holding that imposition of enhanced penalty under child abuse statute where abuse causes the death must be alleged and proven beyond a reasonable doubt); *Wadlow v. State*, 335 Md. 122, 132, 642 A.2d 213, 217–18 (1994) (holding that when the State seeks enhanced penalties, provided by statute, for possession of cocaine with intent to distribute, the State must allege the necessary fact concerning the amount of controlled dangerous substance, and prove that fact beyond a reasonable doubt); *Jones v. State*, 324 Md. 32, 37, 595 A.2d 463, 465 (1991) (holding that for imposition of enhanced penalty provided for by Legislature, the State must prove all statutory conditions precedent beyond a reasonable doubt). Permitting a jury to sentence a person to death based on a preponderance of the evidence standard, *i.e.*, that death is more appropriate than not, offends Maryland due process and principles of fundamental fairness. *Cf. State v. Biegenwald*, 106 N.J. 13, 524 A.2d 130, 151, 155–56 (1987); *State v. Wood*, 648 P.2d 71, 80–81 (Utah 1981).

Evans was ahead of the times. At his initial trial, Evans objected to a jury instruction on grounds that it improperly specified the burden of proof on the issue of the balancing of aggravating and mitigating factors. *Evans v. State*, 304 Md. 487, 537, 499 A.2d 1261, 1287 (1985). Well before *Apprendi* and *Ring*, in his opinion in *Evans* dissenting from the Court's decision to affirm the sentence death, Judge John F. McAuliffe, concluded that the portion of the Maryland death penalty statute addressing the ultimate burden of persuasion and the weighing of the aggravating versus mitigating factors was

unconstitutional. *Id.* at 539, 499 A.2d at 1288 (McAuliffe, J., concurring in part and dissenting in part). He was persuaded that "[d]rawing upon the basic principles of [*In re* ] *Winship* [, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)], *Mullaney* [*v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975),] and *Patterson* [*v. New York*, 432 U.S. 197, 209, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281 (1977)], ... due process requires that the burden of persuasion on this ultimate issue must be upon the State, *and the jury must be persuaded beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances before the penalty of death can be imposed." Id.* at 550–51, 499 A.2d at 1294 (emphasis added). *Apprendi* and *Ring,* in my view, have proven Judge McAuliffe to be correct.

Several other states have held that due process requires a jury to find beyond a reasonable doubt that the aggravating circumstances found to exist outweigh any mitigators found to exist beyond a reasonable doubt.[3] In *Woldt v. People,* 64 P.3d 256 (Colo.2003), the Colorado Supreme Court, following *Ring,* concluded that the Colorado death penalty statute, like the Arizona statute, improperly assigned a factfinding role to a judge in violation of the Sixth Amendment.[4] Noting that "[i]n a weighing state, the trier of fact must weigh the aggravating factors against all the mitigating evidence to determine if the

---

**3.** Some state statutes require a beyond a reasonable doubt standard, others require a preponderance of the evidence standard, and others are silent. *Compare* Ark.Code Ann. § 5–4–603(a)(2) (1987); Conn. Gen.Stat. § 53a–46a (2005) (beyond a reasonable doubt standard not directly in statute, but interpreted as such in *Connecticut v. Rizzo,* 266 Conn. 171, 833 A.2d 363, 410-11 (2003)); N.J. Stat. Ann. § 2C:11–3(c)(3) (West 2005); N.Y.Crim. Proc. Law § 400.27(11)(a) (McKinney 2005); Ohio Rev.Code Ann. § 2929.03(D)(1) (West 2005); Tenn.Code Ann. § 39–13–204(g)(1)(B) (2003); Utah Code Ann. § 76–3–207(5)(b) (2003) (beyond a reasonable doubt), *with* Del.Code Ann. tit. 11 § 4209(d)(1) (2001); Md.Code (1974, 2002 Repl.Vol., 2005 Cum.Supp.), § 2–303(i)(1) of the Criminal Law Article (preponderance of the evidence); Mo.Rev.Stat. § 565.030 (2004) (silent).

**4.** The Colorado statute has four steps, with the third step the weighing one. The court noted that "through the first three steps, Colorado's process resembles a weighing state. '[T]he eligibility phase continues

defendant is eligible for death.... A standard of beyond a reasonable doubt applies to eligibility fact-finding." *Id.* at 263. The court found the balancing stage to be a factfinding stage, required to be determined by a jury and beyond a reasonable doubt as required under *Ring. Id.* at 265.

The Nevada Supreme Court, in *Johnson v. State,* 118 Nev. 787, 59 P.3d 450 (2002), held that the weighing of aggravating against mitigating circumstances is in part a factual determination falling within the *Ring* rubric. The court stated:

> "Moreover, Nevada statutory law requires two distinct findings to render a defendant death-eligible: 'The jury or the panel of judges may impose a sentence of death only if it finds at least one aggravating circumstance and further finds that there are no mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances found.' This second finding regarding mitigating circumstances is necessary to authorize the death penalty in Nevada, and we conclude that it is in part a factual determination, not merely discretionary weighing. So even though Ring expressly abstained from ruling on any 'Sixth Amendment claim with respect to mitigating circumstances,' we conclude that Ring requires a jury to make this finding as well: 'If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt.' "

*Id.* at 460 (citations and footnotes omitted).

Wyoming, a weighing state like Maryland, addressed the burden of persuasion on the process of weighing aggravating

---

through step three, when the jury weighs mitigating evidence against statutory aggravators.' " *Id.* at 264 (citations omitted) (alteration in original). The fourth step, determining whether under all the circumstances, death should be imposed, is the selection stage. *Id.* The court held that "[b]ecause the Sixth Amendment requires that a jury find any facts necessary to make a defendant eligible for the death penalty, and the first three steps of [the statute] required judges to make findings of fact that render a defendant eligible for death, the statute under which Woldt and Martinez received their death sentences is unconstitutional on its face." *Id.* at 266–67.

factors against mitigating factors under the state's death penalty statute. *See Olsen,* 67 P.3d at 584–92. The Wyoming statute does not assign a specific burden in directing the jury to "consider aggravating and mitigating circumstances." *Id.* at 587. Nonetheless, the court directed that the jury should be instructed that before the sentence may be death, each juror "must be persuaded that the aggravating circumstances are so substantial in comparison with the mitigating circumstances that it warrants death instead of a life sentence." *Id.* at 588. The court went on to state that the burden of proof in a capital case necessary for a sentence of death remains on the state, and that if the jury is to be instructed to "weigh," the defendant must produce evidence of mitigating circumstances. *Id.* at 589. The court concluded that, "just as with affirmative defenses, the ultimate burden of negating such defenses by proof beyond a reasonable doubt remains with the State." *Id.* at 589 n. 12. *See also Rizzo,* 833 A.2d at 407 (noting that "[i]mposing the reasonable doubt standard on the weighing process, moreover, fulfills all of the functions of burdens of persuasion. By instructing the jury that its level of certitude in arriving at the outcome of the weighing process must meet the demanding standard of beyond a reasonable doubt, we minimize the risk of error, and we communicate both to the jury and to society at large the importance that we place on the awesome decision of whether a convicted capital felon shall live or die.").

Missouri considered the question of whether the principles set out in *Ring* invalidated a death sentence when a judge made the factual determinations on which eligibility for the death sentence was predicated in *State v. Whitfield,* 107 S.W.3d 253 (Mo.2003). Step three of the Missouri statute requires the jury to determine whether the evidence in mitigation outweighs the evidence in aggravation. *Id.* at 259. Like the Maryland statute, "[i]f it does, the defendant is not eligible for death, and the jury must return a sentence of life imprisonment. While the State once more argues that this merely calls for the jury to offer its subjective and discretionary opinion rather than to make a factual finding, this Court again

disagrees." *Id.* The court held that steps one, two, and three (similar to the Maryland steps) "require factual findings that are prerequisites to the trier of fact's determination that a defendant is death-eligible." *Id.* at 261. The Missouri Supreme Court rejected the state's argument that the finding merely required a subjective finding by the trier of fact, noting as follows:

> "But, the State fails to note that this Court rejected this very argument in its opinion on Mr. Whitfield's appeal of his initial conviction, in which it remanded for the new trial at issue here. In that decision, this Court held that step 2 requires a 'finding of fact by the jury, not a discretionary decision.' This holding is supported by the plain language of the statute. In order to fulfill its duty, the trier of fact is required to make a case-by-case factual determination based on all the aggravating facts the trier of fact finds are present in the case. This is necessarily a determination to be made on the facts of each case. Accordingly, under *Ring*, it is not permissible for a judge to make this factual determination. The jury is required to determine whether the statutory and other aggravators shown by the evidence warrants the imposition of death." [5]

*Id.* at 259 (citations and emphasis omitted).

Finally, the Supreme Court of Arizona, in *State v. Ring*, 204 Ariz. 534, 65 P.3d 915 (2003), on remand from the Supreme Court, rejected the state's argument that the Arizona death penalty statute requiring a judge to weigh aggravating against mitigating circumstances did not require a factual determination. The Arizona court, in concluding that *Ring* required that finding to be made by a jury, necessarily concluded that the determination was a factual one. *Id.* at 942–43.

---

5. In Missouri, step four of the statute requires the jury to assess and declare the punishment at life imprisonment if it decides under all of the circumstances not to assess and declare the punishment at death. *Id.* at 261. Step four in Missouri gives the jury the discretion to give a life sentence. *Id.* Under the Maryland statute, the Missouri steps three and four are collapsed into one step—step three. Thus, step three in Maryland is a factual finding.

Commentators recognize that balancing aggravating against mitigating circumstances is a factfinding process. For example:

"Although there are many variations among the capital sentencing statutes currently in existence, most of these statutes employ a common, tripartite factfinding process that involves the sentencer's making factual findings on three different issues: the existence of aggravating circumstances; the existence of mitigating aspects of the defendant's character, record, or offense; and whether the aggravating circumstances outweigh the mitigating circumstances. The portion of this tripartite structure that has been the central focus of Sixth Amendment scrutiny up to this point has been the first prong: factfinding on the existence of aggravating circumstances. This was the factfinding determination that the now-overruled *Walton* decision and its jurisprudentially linked predecessor, *Hildwin*, deemed suitable for a judge. And it is the factfinding determination that *Ring*, in overruling *Walton*, reserved for the jury. In the wake of *Ring*, the inevitable next questions for resolution are whether the *Ring* rationale requires a jury also to make the second and third factfinding determinations—the determination of the existence of mitigating circumstances and the assessment whether aggravating circumstances outweigh mitigating circumstances."

B. Stevenson, *The Ultimate Authority on the Ultimate Punishment: The Requisite Role of the Jury in Capital Sentencing*, 54 Ala. L.Rev. 1091, 1121 (2003) (emphasis added) (footnote omitted). *See also id.* at 1129 n. 214 (recognizing that balancing of aggravating against mitigating factors is a factual finding). Noting the tripartite nature of the Arizona death penalty statute, Professor Stevenson argues that the *Ring* reasoning as to the first determination, the finding of an aggravating factor, applies equally to the other two determinations. He reasons as follows:

"All of the features of the aggravation finding that the *Ring* Court regarded as significant are equally true of the two other components of the tripartite sentencing determination.

Arizona law conditions a death sentence upon not just a finding of an aggravating circumstance, but also a determination—after identification of any mitigating circumstances in the case—of whether the 'mitigating circumstances [are] sufficiently substantial to call for leniency.' Thus, as the *Ring* Court itself remarked, a defendant cannot 'be sentenced to death [under Arizona law] ... unless [these] further findings [are] made.' Indeed, the statutory feature that the *Ring* Court deemed essential to rejecting the state's characterization of Arizona law as treating a conviction of first-degree murder as sufficient authorization for a death sentence—that the first-degree murder statute itself cross-referenced the aggravation finding as a necessary additional predicate for a sentence of death—applies equally to the other two findings. The statutory cross-reference is not merely to the provision governing the finding of aggravating circumstances: It references the entire tripartite structure for determining the existence of aggravating and mitigating circumstances and gauging their relative weight."

*Id.* at 1126–27 (footnotes omitted) (alterations in original). Inasmuch as the Maryland statute requires that the aggravators outweigh the mitigators as an essential predicate for imposition of the death penalty, the central reasoning of *Ring* should apply to it just as to the Arizona statute.

Reflected throughout the Supreme Court jurisprudence underlying the Eighth Amendment is the principle that death is different. *See, e.g., Ring,* 536 U.S. at 605–06, 122 S.Ct. at 2441–42; *Ford v. Wainwright,* 477 U.S. 399, 411, 106 S.Ct. 2595, 2602, 91 L.Ed.2d 335 (1986) (plurality opinion) (noting that "[t]his especial concern [for reliability in capital proceedings] is a natural consequence of the knowledge that execution is the most irremediable and unfathomable of penalties; that death is different."); *Gardner v. Florida,* 430 U.S. 349, 357, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) (plurality opinion); *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (plurality opinion); *Furman v. Georgia,* 408 U.S. 238, 289, 92 S.Ct. 2726, 2752, 33 L.Ed.2d 346 (1972) (Brennan, J., concurring). In a death proceeding, the

Supreme Court has recognized that "the Eighth Amendment requires a greater degree of accuracy and factfinding than would be true in a noncapital case." *Gilmore v. Taylor*, 508 U.S. 333, 342, 113 S.Ct. 2112, 2117, 124 L.Ed.2d 306 (1993). Justice Kennedy has observed that "[a]ll of our Eighth Amendment jurisprudence concerning capital sentencing is directed toward the enhancement of reliability and accuracy in some sense." *Sawyer v. Smith*, 497 U.S. 227, 243, 110 S.Ct. 2822, 2832, 111 L.Ed.2d 193 (1990).

We pay mere lip service to the principle that death is different and yet continue to impose a lower level of certainty in the death penalty context than we do for other lesser important interests in Maryland. Maryland has required a higher burden of persuasion than preponderance of the evidence in situations involving penalties far less severe than the ultimate penalty at stake under § 413. *See, e.g., 1986 Mercedes v. State*, 334 Md. 264, 282, 638 A.2d 1164, 1173 (1994) (requiring the state to prove the requisite elements under drug forfeiture laws by clear and convincing evidence); *Mack v. Mack*, 329 Md. 188, 207, 618 A.2d 744, 753 (1993) (requiring clear and convincing evidence for the withdrawal of life-sustaining medical treatment); *Owens–Illinois v. Zenobia*, 325 Md. 420, 469, 601 A.2d 633, 657 (1992) (requiring the clear and convincing evidence standard for proof of punitive damages); *Wash. Co. Dep't Soc. Serv. v. Clark*, 296 Md. 190, 197, 461 A.2d 1077, 1081 (1983) (requiring proof of parental unfitness by clear and convincing evidence in order to terminate parental rights); *Coard v. State*, 288 Md. 523, 525, 419 A.2d 383, 384 (1980) (per curiam) (requiring proof by clear and convincing evidence in civil commitment proceedings); *Berkey v. Delia*, 287 Md. 302, 317–20, 413 A.2d 170, 177–78 (1980) (requiring the heightened evidentiary standard of clear and convincing evidence for libel and slander of a public official); *cf. Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979) (stating that "in cases involving individual rights, whether criminal or civil, '[t]he standard of proof [at a minimum] reflects the value society places on individual liberty.'" quoting *Tippett v. Maryland*, 436 F.2d 1153, 1166 (4th Cir.

1971) (Sobeloff, J., concurring in part and dissenting in part), *cert. dismissed sub nom. Murel v. Baltimore City Criminal Court,* 407 U.S. 355, 92 S.Ct. 2091, 32 L.Ed.2d 791 (1972)).

Chief Judge BELL and Judge GREENE have authorized me to state that they join in this dissenting opinion.